United States District Court
Southern District of Texas
**ENTERED**
December 28, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

KENNETH W. BENJAMIN, §
§
  Plaintiff. §
§
VS. § CIVIL ACTION NO. 4:20-CV-00214
§
THE BANK OF NEW YORK §
MELLON, ET AL., §
§
  Defendants. §

## MEMORANDUM AND RECOMMENDATION

Pending before me is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint Under Fed. R. Civ. P. 12(b)(6). *See* Dkt. 42. After reviewing the motion, the response, the reply, and the applicable law, I **RECOMMEND** that the motion be **GRANTED** in part and **DENIED** in part.

## BACKGROUND

On November 24, 2004, Plaintiff Kenneth W. Benjamin executed a Texas Home Equity Note in the amount of $88,000.00 ("Note") and a Texas Home Equity Security Instrument ("Security Instrument") in favor of New Alliance Mortgage, LLC, encumbering the property located at 15823 Kueben Lane, Missouri City, Texas, 77489 (the "Property"). Both the Note and the Security Instrument were assigned to Bank of New York Mellon ("Bank of New York") on June 15, 2017. Roughly two years later, Bank of New York brought a judicial foreclosure proceeding in the 434th Judicial District Court of Fort Bend

County, Texas, concerning the Property.  The state district court entered an order on October 17, 2019 for judicial foreclosure, but vacated the order on January 6, 2020.

Benjamin filed the instant lawsuit in state district court in Fort Bend County, Texas, in January 2020.  Defendants Bank of New York and Bayview Loan Servicing, LLC ("Bayview") timely removed the action to this Court.  The live pleading is Plaintiff's Second Amended Petition ("Second Amended Complaint").  In that pleading, Benjamin brings suit against Bank of New York, Bayview, Hughes Watters Askanase, LLP ("HWA") and Rachel Donnelly ("Donnelly").  Bayview was the servicer on the loan while HWA and Donnelly represented Bank of New York and Bayview in the state foreclosure proceedings. Benjamin alleges a laundry list of causes of action against the Defendants: violations of the Texas Constitution, improper acceleration of loan, breach of contract, suit to remove cloud and quiet title, declaratory judgment, injunctive relief, statutory fraud, fraud, civil conspiracy, negligent misrepresentation, negligent undertaking, equitable estoppel, intentional infliction of emotional distress, and violations of the Real Estate Settlement Procedures Act ("RESPA").

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party is entitled to dismissal when the opposing party fails to state a claim upon which relief may be granted.  To avoid a Rule 12(b)(6) dismissal, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009).  In reviewing a Rule 12(b)(6) motion, I must "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 701 (5th Cir. 2017) (quotation omitted).  The purpose of a Rule 12(b)(6) motion is to test the formal sufficiency of the plaintiff's complaint and should not be used to resolve factual issues or the merits of the case.  *See In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012) (It is the responsibility of the district court at the Rule 12(b)(6) stage to decide "whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."). Because a complaint must be liberally construed in the plaintiff's favor, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and rarely granted.  *See Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009).

"[I]n deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint."  *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).  A court may "consider documents integral to and explicitly relied on in the complaint, that the defendant appends to his motion to dismiss, as well as the full text of documents that are partially quoted or referred to in the complaint."  *In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 882 (S.D. Tex. 2001) (quotation omitted).

## ANALYSIS

### A.    Texas Constitution

Benjamin first alleges that any lien on the Property is void because the underlying mortgage loan violated the Texas Constitution's home equity loan provisions.[1] Specifically, Benjamin claims: (1) the closing fees exceeded three percent of the loan; (2) the originator of the loan did not wait the required 12 days before closing; (3) the loan did not close one business day after the date Benjamin received a final itemized disclosure of the fees, points, interest costs, and charges; (4) the loan signed at closing contained blank spaces; (5) the loan originator did not execute the acknowledgment of fair market value. *See* TEX. CONST. art. XVI, § 50(a)(6)(E), 50(a)(6)(M)(i)–(ii), 50(a)(6)(Q)(iii), 50(a)(6)(Q)(ix). Defendants' argument in favor of dismissal is two-fold. First, Defendants claim that Benjamin is barred by the doctrine of res judicata from challenging the validity of the Note because he failed to raise the constitutional arguments in an earlier bankruptcy proceeding. Second, in the event that res judicata does not bar Benjamin's constitutional

---

[1] Although not addressed by the parties, I feel compelled to note that § 50(a) of the Texas Constitution does not create an independent cause of action. Instead, § 50(a) "simply describes what a home-equity loan must look like if a lender wants the option to foreclose on a homestead upon borrower default." *Garofolo v. Ocwen Loan Servicing, LLC*, 497 S.W.3d 474, 478 (Tex. 2016). "A plaintiff therefore does not state a claim merely by alleging constitutional violations of section 50(a), and he instead must plead such violation in the context of a substantive cause of action," such as a breach of contract or quiet title action. *Blank v. Deutsche Bank Nat'l Trust Co.*, No. 3:16-CV-1463-K-BH, 2017 WL 6451186, at *4 (N.D. Tex. Nov. 11, 2017). *See also Priester v. Long Beach Mortg. Co.*, No. 4:16-CV-449-ALM-KPJ, 2018 WL 1833255, at *16 (E.D. Tex. Jan. 23, 2018) ("[A]lthough § 50(a) does not create substantive rights, borrowers may assert constitutional violations as a defense to foreclosure actions brought by lienholders or by filing their own substantive cause of action, such as a breach of contract or a quiet title action."). As discussed more fully below, I do find that Benjamin has asserted constitutional violations in the context of a right to quiet title cause of action.

4

claims, Defendants argue that Benjamin has failed to properly state a claim on each alleged constitutional violation.   I address both arguments in turn.

### 1. Res Judicata

Defendants first argue that Benjamin's claims under the Texas Constitution are barred by res judicata because they should have been litigated or raised in a previous bankruptcy proceeding involving Benjamin.

"Claim preclusion, or res judicata, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).   The purpose of res judicata is to prevent vexatious litigation, promote judicial economy, and give finality to certain judgments.   *See Weaver v. Tex. Cap. Bank N.A.*, 660 F.3d 900, 908 (5th Cir. 2011)*.*   Res judicata applies when (1) both suits involved the same parties; (2) a court of competent jurisdiction rendered the prior judgment; (3) the prior judgment was final and on the merits; and (4) the plaintiff raised the same cause of action in both suits.   *See Oreck Direct, LLC v. Dyson Inc.*, 560 F.3d 398, 401 (5th Cir. 2009).   Under the Fifth Circuit's transaction test, the fourth element is met if the two actions are based on "the same nucleus of operative facts."   *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999) (cleaned up).   If these four conditions are satisfied, the plaintiff is barred from attempting to relitigate any claims that could or should have been brought in the prior action.   *See Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004).   "Although *res judicata* generally cannot be raised in a motion to dismiss and should instead 'be pleaded as an affirmative defense,' dismissal under Rule 12(b)(6) is appropriate if the res judicata bar is apparent from the complaint

5

and judicially noticed facts and the plaintiff fails to challenge the defendant's failure to plead it as an affirmative defense." *Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020) (quoting *Test Masters*, 428 F.3d at 570 n.2).

The following recitation of facts is undisputed.  On May 30, 2017, Benjamin filed for Chapter 7 bankruptcy in the Southern District of Texas—Houston Division (the "Bankruptcy Case").  Benjamin's bankruptcy petition triggered an automatic stay under 11 U.S.C. § 362, stopping most collection efforts by creditors against Benjamin and his property.  Bayview, as mortgage servicer for Bank of New York, filed a motion for relief from the automatic stay as to the Property so that it could proceed with foreclosure.  After several hearings on the motion, Chief Bankruptcy Judge David Jones issued an order on September 14, 2018 that stated, in pertinent part, that "the automatic stay has been terminated by operation of law."  Dkt. 42-12 at 2.  Judge Jones also stated that he believed cause existed for termination of the bankruptcy stay even if the stay had not been terminated by operation of law.  *See id.*

Given these facts, Defendants argue that all the elements of res judicata are met.  I am not convinced. Although the record establishes the first, second, and fourth elements of the res judicata defense (the parties are the same; the bankruptcy court is a court of competent jurisdiction; and the two actions are based on the same nucleus of operative facts), I cannot say with any certainty that there was a final judgment on the merits.

In the Fifth Circuit, a bankruptcy court's order lifting an automatic stay is considered a final judgment on the merits for purposes of res judicata.  *See In re Chunn*, 106 F.3d 1239, 1241 (5th Cir. 1993); *In re Baudoin*, 981 F.2d 736, 739–40 (5th Cir. 1993).

6

"'[D]irect defenses' that the debtor could or should have litigated in response to the creditor's motion for relief from the stay," such as a challenge to the validity of a lien, will "be precluded by the application of *res judicata*." *D-1 Enter., Inc. v. Com. State Bank*, 864 F.2d 36, 39 (5th Cir. 1989).  But here, there is no bankruptcy court order lifting the automatic stay.  The order at issue is *not* titled "Order Lifting Stay," but rather titled "Order Confirming Termination of Automatic Stay."  Dkt. 42-12 at 2.  That distinction is significant.  The order does not have the legal effect of lifting the automatic stay because, at the time Judge Jones entered his September 14, 2018 order, there was no automatic stay in effect to lift.  His order expressly acknowledges that with, or without his order, the automatic stay had already been terminated by operation of law.  Because I do not believe Judge Jones's order is a final judgment on the merits for *res judicata* purposes, I am unwilling to apply this venerable legal doctrine to prohibit Benjamin from challenging the validity of the loan under the Texas Constitution.

### 2. Alleged Constitutional Violations

In Texas, "the homestead has always been protected from forced sale, not merely by statute as [in most] states, but by the [Texas] Constitution." *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 570 (Tex. 2013).  However, a homestead can be subject to a forced sale if a lender extends credit that satisfies certain requirements imposed by the Texas Constitution.  *See* TEX. CONST. art. XVI, § 50(a)(6).  Benjamin asserts that the extension of credit he obtained did not comply with the § 50(a)(6) requirements and that Defendants improperly initiated foreclosure proceedings on his homestead.  Defendants

argue that Benjamin's Second Amended Complaint inadequately supports his Texas Constitutional claims and should be dismissed under Rule 12(b)(6).

### a. *Section 50(a)(6)(E)*

Benjamin executed the Note in 2004.   At that time, the Texas Constitution invalidated home equity loans that "require[d] the owner or the owner's spouse to pay, in addition to any interest, fees to any person that are necessary to originate, evaluate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, three percent of the original principal amount of the extension of credit."  TEX. CONST. art. XVI, § 50(a)(6)(E) (West, Westlaw through 2001 amendments).[2]   This provision is commonly referred to as the three percent cap.

The principal amount of Benjamin's loan was $88,000.00.   Three percent of the loan equals $2,640.00.   The HUD Settlement Statement indicates that Benjamin owed $6,046.51 at closing, but this amount included loan discount points ($880.00), per diem interest ($16.58), and taxes ($2,509.93).   Texas law is clear that these closing items—which total $3,406.51—do not count toward the three percent cap under § 50(a) of the Texas Constitution.   *See Cerda v. 2004-EQR1 LLC*, 612 F.3d 781, 796 (5th Cir. 2010) ("the discount points involved in the [plaintiffs'] loan were interest that did not count against the 3% cap in § 50(a)(6)(E)"); *Woelfel v. GMAC Mortg. Corp.*, LLC, No. H-13-893, 2013 WL 4787793, at *5 (S.D. Tex. Sept. 9, 2013) (holding that "county taxes are not fees that count

---

[2] Effective January 1, 2018, Section 50(a)(6)(E) now provides for a two percent cap and includes in its calculation "any bona fide discount points used to buy down the interest rate."  TEX. CONST. art. XVI, § 50(a)(6)(E).

towards the three-percent fee cap of § 50(a)(6)(E)"); *McCallum v. Wells Fargo Bank, N.A.*, No. A-07-CA-1000 AWA, 2009 WL 3166070, at *2 (W.D. Tex. Sep. 29, 2009) ("[S]ection 50(a)(6)(E) limits fees, not interest."). Taking $3,406.51 out of the equation, Benjamin was actually required to pay $2,640.00, which is exactly three percent of the loan. There is no violation of § 50(a)(6)(E).

### b. *Section 50(a)(6)(M)(i)*

The Texas Constitution's 12-day rule provides that a home equity loan cannot close until either 12 days after the borrower submits the loan application *or* 12 days after the borrower receives a § 50(g) notice, whichever is later. *See* TEX. CONST. art. XVI, § 50(a)(6)(M)(i). A § 50(g) notice details the home equity loan requirements under § 50(a). *See id.* § 50(g). To withstand Defendants' motion to dismiss this claim, Benjamin must allege facts plausibly showing that he closed less than 12 days after (i) submitting the loan application to the lender; *or* (ii) receiving the § 50(g) notice, whichever is later.

The Second Amended Complaint asserts that Benjamin submitted the loan application to the lender on November 24, 2004, and the loan closed six days later on November 30, 2004. This allegation, on its face, makes a sufficient showing for Rule 12(b)(6) purposes that the loan closed less than 12 days after Benjamin submitted the loan application to the lender. Benjamin bolsters the allegation with a Uniform Residential Loan Application, attached to the initial lawsuit and incorporated into the Second Amended Complaint, which is signed by Benjamin on November 24, 2004, less than 12 days before the purported closing date of November 30, 2004. *See* Dkt. 1-1 at 81–82.

In light of these allegations and documentary evidence, Defendants make two arguments.  First, Defendants contend that Benjamin is estopped from taking a position contrary to his sworn statements in the Texas Home Equity Affidavit and Agreement ("Home Equity Affidavit") he signed on November 24, 2004.  In the Home Equity Affidavit, Benjamin swore that:

> The Note and Security Instrument have not been signed before the twelfth (12th) day after the later of the date the owner of the Property submitted an application to the Lender, or the Lender's representative for the Extension of Credit, or the date that the Lender, or the Lender's representative provided the owner with a copy of the Notice Concerning Extensions of Credit defined by Section 50(a)(6), Article XVI of the Texas Constitution.

Dkt. 42-3 at 3.  Because the Home Equity Affidavit expressly contradicts Benjamin's claim that the loan closed less than 12 days after he submitted the loan application, Defendants argue that the affidavit controls and the claim should be dismissed.

"Estoppel by contract, a form of quasi-estoppel, applies to preclude a person from asserting, to another's disadvantage, a right inconsistent with a position previously taken." *Salas v. LNV Corp.*, 409 S.W.3d 209, 217 n.2 (Tex. App.—Houston [14th Dist.] 2013, no pet.).  Because quasi-estoppel is an affirmative defense under Texas law, *see Clark v. Cotton Schmidt, L.L.P.*, 327 S.W.3d 765, 770 (Tex. App.—Fort Worth 2010, no pet.), it is generally not suited to resolution by way of a Rule 12(b)(6) motion.  *See EPCO Carbon Dioxide Prods. V. J.P. Morgan Chase Bank, N.A.*, 467 F.3d 466, 470 (5th Cir. 2006) ("Although dismissal under rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint.").  A defendant may succeed on a Rule 12(b)(6) motion to dismiss with respect to an affirmative defense

only where "the allegations in the complaint suffice to establish that ground." *Jones v. Bock*, 549 U.S. 199, 215 (2007).

This case "is not one in which the affirmative defense is apparent on the face of the pleadings. Indeed, the home equity affidavit was neither mentioned in the [Second Amended Complaint] nor attached thereto." *Acevedo v. Quicken Loans, Inc.*, 7:13-CV-450, 2014 WL 12577401, at *3 (S.D. Tex. Jan. 31, 2014). Defendants' "affirmative defense only became apparent when it was affirmatively asserted. Therefore, a motion to dismiss is an improper procedural mechanism for the Court's consideration of this affirmative defense." *Id.* *See also Mosser v. Flagstar Bankcorp, Inc.*, No. 4:19-cv-882-ALM-KPJ, 2020 WL 6482975, at * 5 (E.D. Tex. June 15, 2020 ("[W]hether or not Plaintiff is estopped from asserting a breach of contract claim based on the Home Equity Note because of the Affidavit is an issue of fact that is not properly considered at th[e Rule 12(b)(6)] stage of the proceedings.").

Even if the Home Equity Affidavit was properly before me, I must view all well-pleaded facts in the light most favorable to Benjamin. *See Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 701 (5th Cir. 2017). In this light, there is a factual dispute as to when Benjamin submitted the loan application. Benjamin argues in the Second Amended Complaint—and incorporates documents in the operative complaint supporting his assertion—that he submitted the loan application on November 24, 2004, less than 12 days before the loan closed. The Home Equity Affidavit suggests the opposite—that Benjamin submitted the loan application 12 days after the loan closed. At this juncture, my function is limited to testing the sufficiency of the complaint, and I must avoid weighing the

11

evidence that might be presented at trial. *See Jackson v. City of Beaumont Police Dep't*, 958 F.2d 616, 618 (5th Cir. 1992). Benjamin has met this lenient standard and sufficiently stated a claim.

Defendants next argue that documentary evidence establishes that Benjamin submitted a loan application on November 4, 2004, more than 12 days before the loan closed. Although Defendants have attached a November 4, 2004 loan application to their motion, I simply cannot consider that application at this time because it is not referenced in the operative complaint. *See Malone Gaming Mgmt., LLC v. St. Tammany Parish*, 456 F. App'x 336, 340–41 (5th Cir. 2011) (Documents outside the live complaint can be considered only when they are: "(1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims."). I am particularly reluctant at this early stage of the case to rely on the November 4, 2004 loan application because Benjamin alleges that it is a "fraudulent document." Dkt. 51 at 19. Even if I did consider the November 4, 2004 loan application, I would still deny Defendants' motion to dismiss the 12-day rule claim because I must view the facts in the Second Amended Complaint in the light most favorable to Benjamin. I am perplexed as to why there were supposedly separate loan applications submitted on November 4, 2004, and November 24, 2004, and I am uncomfortable dismissing the claim without further factual elaboration. Independently, Benjamin alleges that he never received the legally required § 50(g) notice, which is intended to explain to consumers that the loan is governed by § 50(a). Remember, to overcome a motion to dismiss a § 50(a)(6)(M)(i) claim, Benjamin must sufficiently allege facts showing that he closed less than 12 days after (i) submitting the loan application to the lender; *or* (ii)

receiving the § 50(g) notice, whichever is later.  Regardless of when Benjamin applied for the loan, his allegation that he never received the § 50(g) notice is, by itself, sufficient to survive past the Rule 12(b)(6) pleading stage.  Benjamin's § 50(a)(6)(M)(i) claim should not be dismissed.

              c.  *Section 50(a)(6)(Q)(ix)*

Section 50(a)(6)(Q)(ix) requires that "the owner of the homestead and the lender sign a written acknowledgment as to the fair market value of the homestead property on the date the extension of credit is made."  TEX. CONST. art. XVI, § 50(a)(6)(Q)(ix).

Benjamin signed the Acknowledgement Regarding Fair Market Value of Homestead Property ("Acknowledgment Form") on November 24, 2004.  The lender signed the same document 19 days later on December 13, 2004.  Because the lender did not sign the Acknowledgment Form on the date the extension of credit was made (November 24, 2004), Benjamin alleges that Defendants failed to comply with § 50(a)(6)(Q)(ix).

This argument has no legs.  As Chief Judge Lee Rosenthal explained:

> Nothing in the language [of § 50(a)(6)(Q)(ix)] suggests that all parties must sign the acknowledgment on the same day.  Section 50(a)(6)(Q) sets out requirements for actions to be performed at specific times in separate clauses. If the parties had to sign the acknowledgment at the same time, this requirement would be clearly stated in § 50(a)(6)(Q); *see, e.g.*, TEX. CONST. art. XVI, § 50(a)(6)(Q)(v) ("at the time the extension of credit is made, the owner of the homestead shall receive a copy of the final loan application and all executed documents signed by the owner at closing related to the extension of credit").  The phrase "on the date the extension of credit is made" in § 50(a)(6)(Q)(ix) immediately follows "the fair market value of the property," indicating that the acknowledgment must state what the fair market value is on the date of the extension of credit, not that all the parties

must [sign] the acknowledgment on this date.  TEX. CONST. art. XVI, § 50(a)(6)(Q)(ix).

*Rideau v. Fed. Nat'l Mortg. Ass'n*, H-18-3937, 2019 WL 1789729, at *6 (S.D. Tex. Apr. 24, 2019) (record cite omitted).  Because Benjamin and the lender both signed the Acknowledgment Form, there is no violation of § 50(a)(6)(Q)(ix).  It does not matter that Benjamin and the lender signed on different dates.

> d.  *Section 50(a)(6)(M)(ii)*

Section 50(a)(6)(M)(ii) provides that a home equity loan may not be closed before:

> one business day after the date that the owner of the homestead receives a copy of the loan application if not previously provided and a final itemized disclosure of the actual fees, points, interest, costs, and charges that will be charged at closing.

TEX. CONST. art. XVI, § 50(a)(6)(M)(ii).  To properly plead a claim under § 50(a)(6)(M)(ii), Benjamin must simply allege that he did not receive a copy of the loan application or a final itemized disclosure of the actual fees, points, interest, costs, and charges that will be charged at closing at least one day before the date of closing.

In the Second Amended Complaint, Benjamin alleges that he received a copy of the loan application and the itemized disclosures on November 24, 2004.  Benjamin also alleges that the closing date was November 30, 2004.  Because Benjamin readily acknowledges that more than one day elapsed after he received a copy of the loan application and the itemized disclosures, he has pled himself out of a § 50(a)(6)(M)(ii) claim.  *See* Dkt. 51 at 22 (The loan "closed six (6) days after receiving the final itemized disclosure.").  On its face, these allegations are not sufficient to state a claim for relief.

Benjamin suggests that § 50(a)(6)(M)(ii) requires a loan to close one day after a borrower receives the itemized disclosures. Since the loan closed six days after he received the final itemized disclosure, Benjamin maintains he can pursue a § 50(a)(6)(M)(ii) claim. Benjamin is mistaken. The Texas Constitution does not require a loan to close one day after a borrower receives the final itemized disclosure. The plain language of the relevant constitutional provision prohibits closing a loan "before" one business day after receipt of the itemized disclosures. TEX. CONST. art. XVI, § 50(a)(6)(M)(ii). This means that closing of the loan must occur *at least* one business day after receipt of the final itemized disclosure. A time period of six days clearly satisfies this requirement.

In an odd twist, Defendants do not dispute that Benjamin received the itemized disclosures on November 24, 2004. Instead, Defendants argue that the loan actually closed on November 24, 2004, as opposed to the November 30, 2004 date alleged by Benjamin. Of course, this argument does not help Defendants at all. If I agree with Defendants that the closing date is November 24, 2020, the net effect is that one business day did not elapse before receipt of the final itemized disclosures and the closing. In a weird way, Defendants are, in effect, arguing themselves into § 50(a)(6)(M)(ii) liability.

Luckily for Defendants, I am required at this Rule 12(b)(6) stage to accept all claims in the Second Amended Complaint as true. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) ("[W]e must accept as true all well pleaded facts in the complaint."). It is not my job at this preliminary stage to parse through the lawsuit's allegations and make factual determinations as to the merits of particular claims. The Second Amended Complaint alleges that the closing date was

November 30, 2004, and I must accept that allegation as true—for now.[3]  As a result, Benjamin's claim under § 50(a)(6)(M)(ii) must fail.

### e.  *Section 50(a)(6)(Q)(iii)*

Benjamin next claims that his property is protected from forced sale because the extension of credit did not comply with § 50(a)(6)(Q)(iii), which prevents lenders from foreclosing on a borrower's homestead if the underlying extension of credit was conditioned on the borrower's agreement to "sign any instrument in which blanks relating to substantive terms of agreement are left to be filled in [later]."  TEX. CONST. art. XVI, § 50(a)(6)(Q)(iii).   Benjamin identifies one blank present at the time he signed the Acknowledgement Regarding Fair Market Value of Homestead Property—the blank where the lender should have signed the document.  Benjamin misses the forest for the trees.  Section 50(a)(6)(Q)(iii) requires fully fleshed out loan agreements to ensure that lenders do not add substantive terms to loan documents after a borrower executes the documents.  This constitutional provision does not, as Benjamin suggests, require lenders to sign each and every loan document before the borrower signs the same documents.  Stated simply, a blank signature line does not affect the substantive rights or obligations of the parties to the agreement.  This claim should be dismissed.

---

[3] To be clear, I am not making a factual determination that the closing date took place on November 30, 2020.  The parties are certainly entitled to present evidence and argument as the case progresses as to when the closing date occurred.

**B.      Improper Acceleration of Loan**

Under a heading of the Second Amended Complaint titled "Improper Acceleration of Loan," Benjamin argues that Bank of New York failed to give him the appropriate notice of its intent to accelerate the Note.  Defendants argue that "Improper Acceleration of the Loan" is not a cognizable claim under Texas law.  I need not address this issue since Benjamin acknowledged in his response to the motion to dismiss and at oral argument that he is not trying to assert an independent cause of action for "Improper Acceleration of Loan."

**C.      Breach of Contract**

The Second Amended Complaint alleges that Defendants breached paragraph 19 of the Security Instrument, which states: "It is Lender's and [B]orrower's intention to conf[o]rm strictly to [the] provision[s] of the Texas Constitution applicable to Extension[s] of Credit as defined by Section 50(a)(6), Article [X]VI of the Texas Constitution."  Dkt. 28 at 9–10.

To properly state a breach of contract claim under Texas law, Benjamin must allege: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."  *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quotation omitted).  Benjamin has not alleged that he performed or tendered performance as required by the Security Instrument.  More than that, Benjamin does not contest Defendants' allegation that he "was in arrears in the amount of $10,468.51."  Dkt. 42 at 17.  In fact, Benjamin admits that he became late on his loan payments in 2018.  *See* Dkt. 51 at 25 ("Plaintiff made the payments and performed under

17

the contract from 2004 thru 2017.").  "Under Texas law, it is a well-established rule that a party to a contract who is himself in default cannot maintain a suit for its breach." *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990) (quotation omitted).  With this basic principle in mind, federal courts routinely dismiss breach of contract actions brought by borrowers in default.  *See, e.g.*, *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 238 (5th Cir. 2014) (holding dismissal of breach of contract claim was proper where plaintiffs were delinquent on their loan payments); *Bynane v. Bank of New York Mellon*, No. H-15-2901, 2015 WL 8764272, at *5 (S.D. Tex. Dec. 15, 2015) (dismissing breach of contract action when plaintiff admitted that the loan was in default).  This case should be no different.  Because Benjamin failed to perform his own duties under the contract, he cannot pursue a breach of contract claim.

**D.    Suit to Remove Cloud and Quiet Title**

In his quiet title claim, Benjamin contends that the lien securing the Note is void because it fails to comply with the Texas Constitution's Article 16, § 50(a) requirements.

"A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property." *See Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (quotation omitted).  A suit to quiet title "is an equitable action that involves *clearing* a title of an invalid charge against the title." *Longoria v. Lasater*, 292 S.W.3d 156, 165 n.7 (Tex. App.—San Antonio 2009, pet. denied) (quotation omitted).  To prevail on a claim to quiet title Benjamin must allege: "(1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although

18

facially valid, is invalid or unenforceable." *Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet. denied). "[T]he plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Defendants' motion to dismiss advances three reasons why Benjamin's quiet title claim should be dismissed for failure to state a claim. First, Defendants contend that Benjamin failed to raise the quiet title claim in the earlier bankruptcy proceeding and that he should be precluded from raising the claim now. This argument fails here for the same reason it failed earlier—there was no final judgment on the merits in the bankruptcy proceeding.

Defendants' second and third arguments go nowhere. According to Defendants, the Note, Security Instrument, and Assignment of Deed of Trust establish Bank of New York as the mortgagee with the right to enforce the Note and Security Instrument. Defendants also argue that the Second Amended Complaint acknowledges that Defendants own the loan. Even if Defendants have the right to enforce the Note and Security Instrument, and even if Defendants are owners of the loan, there can still be a cloud on the title. Indeed, Benjamin alleges that Defendants have no right in the Property because the underlying lien is invalid for failure to follow the Texas Constitution's § 50(a) requirements. Benjamin has properly stated a claim for quiet title.

## E.   Declaratory Judgment/Injunctive Relief

Benjamin asks this Court to declare that the Note and accompanying lien on his home are void under the Texas Constitution. The Federal Declaratory Judgment Act

19

("FDJA") provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  Importantly, the FDJA is not an independent cause of action, but rather "enhances the remedies available" to rectify cognizable legal injuries. *Calderon v. Bank of Am.*, 941 F. Supp. 2d 753, 768 (W.D. Tex. 2013).  *See also MetroPCS Wireless, Inc. v. Virgin Mobile USA, LP*, No. 3:08–CV–1658–D, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (The FDJA "does not create a substantive cause of action" and "is merely a vehicle that allows a party to obtain 'an early adjudication of an actual controversy' arising under other substantive law.") (quotation omitted).  Because at least one of Benjamin's substantive causes of action is viable (suit to quiet title), his declaratory judgment action endures through the motion to dismiss stage. A declaratory judgment could attach as a remedy if Benjamin prevails on his quiet title claim.

Benjamin also asks this Court to enjoin Defendants from proceeding with a foreclosure sale, taking possession of the Property, moving forward with eviction proceedings, and collecting on the mortgage.  Injunctive relief, like declaratory relief, is a remedy provided when a litigant prevails on a viable underlying legal claim.  *See Flowers v. Deutsche Bank Nat'l Tr. Co.*, 614 F. App'x 214, 216 (5th Cir. 2015); *Taylor v. Ditech Fin., LLC*, No. H-16-2465, 2017 WL 2362493, at *6 (S.D. Tex. May 31, 2017).  "[A] request for injunctive relief is fatally flawed and fails to state a claim for relief in the absence of an underlying viable cause of action supporting the entry of a judgment." *Silver*

*Gryphon, LLC v. Bank of Am., N.A.*, No. 4:13-CV-695, 2013 WL 6195484, at *7 (S.D. Tex. Nov. 27, 2013). Because Benjamin has successfully pled a viable cause of action for suit to quiet title, his request for injunctive relief survives.

## F.    Section 12.002 of the Texas Civil Practice and Remedies Code

Benjamin next insists that Defendants have violated § 12.002(a) of the Texas Civil Practice and Remedies Code, which creates liability for knowingly making, presenting, or using a "fraudulent court record or a fraudulent lien or claim against real or personal property" with the intent to cause another person harm. TEX. CIV. PRAC. & REM. CODE § 12.002(a)(1).

As noted above, Bank of New York brought a judicial foreclosure proceeding against Benjamin in the fall of 2019 in the 434th Judicial District Court of Brazoria County, Texas. Benjamin's § 12.002 claim is based on the premise that Defendants fraudulently obtained an Order to Proceed With Expedited Foreclosure. Specifically, Benjamin alleges that attorneys for Defendants misled the state court judge in the foreclosure case by representing to the judge that notice of default was sent to Benjamin by first class mail instead of by certified mail.[4]

Benjamin mistakenly characterizes certified mail as a type of mail distinct from first-class mail. Almost two decades ago the Fifth Circuit held that certified mail is "a special type of first class mail whose primary purpose is to provide evidence of an

---

[4] The Security Instrument specifically states: "Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means." Dkt. 42-2 at 11.

individual's receipt of delivery." *Degruise v. Sprint Corp.*, 279 F.3d 333, 337 (5th Cir. 2002). In the last several years, the Fifth Circuit has reaffirmed this principle on multiple occasions. *See Hagler v. DGB Partners, Inc.*, 903 F.3d 460, 468 n.37 (5th Cir. 2018); *King v. Select Portfolio Servicing, Inc.*, 740 F. App'x. 814, 817 (5th Cir. 2018). In short, there is no *legal* distinction between certified mail and first-class mail. *See Crear v. Select Portfolio Servicing, Inc*., 760 F. App'x 291, 294–95 (5th Cir. 2019) (notices sent by certified mail satisfied first-class mail requirement of loan documents and the Texas Property Code). Accordingly, Benjamin's § 12.002(a) claim must be dismissed because there are no allegations that Defendants made, presented, or used any allegedly fraudulent instrument.

## G.    Fraud/Civil Conspiracy/Negligent Misrepresentation

Benjamin's Second Amended Complaint also asserts causes of action for fraud, civil conspiracy, and negligent misrepresentation. All three claims hinge on Benjamin's assertion that Defendants obtained a court order by lying "to the court saying the Notice of Default letter was sent by first class mail" when they knew that the Notice of Default letter had actually been "sent by certified mail." Dkt. 28 at 16. As discussed above, there is nothing factually or legally inaccurate with the representation allegedly made by Defendants to the state court judge that notice was sent via first-class mail. According to well-established Fifth Circuit precedent, first-class mail and certified mail are legally considered one and the same. *See Degruise*, 279 F.3d at 337; *Hagler*, 903 F.3d at 468 n.37. Because Benjamin readily admits that notice of default was sent by certified mail, there is nothing false or misleading about Defendants' alleged statement that the notice was sent

by first-class mail.  S*ee* Dkt. 51 at 8, 9, 32 and 33.  As a result, Benjamin's fraud, civil

conspiracy, and negligent misrepresentation claims must be dismissed for failure to state a

claim.  *See Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 554 (Tex. 2019)

(to survive a motion to dismiss, a fraud claim must include an allegation that a defendant

made a material representation that was false); *Agar Corp., Inc. v. Electro Circuits Int'l,*

*LLC*, 580 S.W.3d 136, 141 (Tex. 2019) (a proper civil conspiracy claim requires one or

more unlawful, overt acts); *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*, 546

S.W.3d 648, 654 (Tex. 2018) (a cognizable negligent misrepresentation requires

allegations demonstrating that the defendant suppled false information for the guidance of

another in the other's business).

## H.    Negligent Undertaking

Benjamin also makes a negligent undertaking claim.  To establish a negligent

undertaking claim, Benjamin must show that: (1) Defendants undertook to perform

services that they knew or should have known were necessary for Benjamin's protection;

(2) Defendants failed to exercise reasonable care in performing those services; and either

(a) Benjamin suffered harm because of his reliance on the Defendants' performance or (b)

Defendants' failure to exercise such care increased Benjamin's risk of harm.  *See Nail v.*

*Plunkett*, 404 S.W.3d 552, 555–56 (Tex. 2013).

Benjamin's entire negligent undertaking theory "is that Defendant(s) had a legal

duty to __NOT__ foreclose on Plaintiff without having first completed the default notification

process.  That duty is spelled out in paragraphs 21 & 22 of the Security Instrument."  Dkt.

28 at 19.  That's it.  Only this and nothing more.

Although it is unclear from the Second Amended Complaint, Benjamin's response to the pending motion explains that his negligent undertaking claim is based on the concept that Defendants somehow failed to exercise reasonable care by sending the notice of default by certified mail. As explained, that argument is without merit. The Security Instrument specifically allowed notice to be sent by first class mail, which is equivalent to certified mail. Benjamin's negligent undertaking claim fails for three independent reasons: (1) Benjamin has not sufficiently alleged that Defendants undertook any services they knew or should have known were necessary for his protection; (2) Benjamin has not sufficiently alleged that Defendants failed to exercise reasonable care; and (3) the economic loss rule bars Benjamin's claim because the only duties Defendants allegedly owed to Benjamin are the contractual duties set forth in the Security Instrument.

## I.     Equitable Estoppel

Rounding third and headed home, Benjamin asserts an equitable estoppel claim. As a preliminary matter, equitable estoppel is not an independent cause of action under Texas law. *See Forest Springs Hosp. v. Ill. New Car & Truck Dealers Ass'n Emp. Ins. Tr.*, 812 F. Supp. 729, 733 (S.D. Tex. 1993). The equitable estoppel doctrine is a purely defensive theory used as a way to prevent an opposing party from raising a particular claim or defense. *See Kelly v. Rio Grande Computerland Grp.*, 128 S.W.3d 759, 769 (Tex. App—El Paso 2004, no pet.); *Ex Parte Owens*, 605 S.W.2d 709, 711 (Tex. Civ. App.—Dallas 1980, no writ). Equitable estoppel principles are often confused with the promissory estoppel doctrine, which can be used offensively for affirmative enforcement of a promise

in lieu of a breach of contract claim.[5]  That said, the elements of equitable estoppel are: "(1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515–16 (Tex. 1998).

Benjamin's factual support for his equitable estoppel claim is summed up entirely by the following: "Items 1-5 above perfectly describes the behavior of John Doe 1 and John Doe 2 at Plaintiff's 736 Hearing."  Dkt. 28 at 21.  A "736 Hearing" is a hearing required by Texas law before a state court judge can rule on a motion for expedited foreclosure under Texas Rule of Civil Procedure 736.  Benjamin fails to allege any facts that could support an equitable estoppel or a promissory estoppel theory of recovery.  To the extent Benjamin complains that Defendants represented to the state court judge that the notice of default was sent by first-class mail, such representation could not support a claim for equitable or promissory estoppel because that representation was true and accurate.  There is no cognizable equitable estoppel or promissory estoppel claim.

## J.     Intentional Infliction of Emotional Distress

Benjamin next asserts a cause of action for intentional infliction of emotional distress.  Benjamin claims that Defendants' "decision to proceed with a foreclosure action

---

[5] The elements of a promissory estoppel claim are a promise, the promisor foreseeing that the promisee will rely on the promise, and detrimental reliance by the promisee.  *See Sandel v. ATP Oil & Gas Corp.*, 243 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

despite not having completed the proper notification process" led to severe emotional distress, including "sleepless nights, unnecessary worrying, loss of appetite, and thoughts of suicide." Dkt. 28 at 18.

The elements of a claim for intentional infliction of emotional distress under Texas law are that: (1) the defendant acted intentionally or recklessly; (2) the defendants' conduct was "extreme and outrageous"; (3) the defendant caused the plaintiff to suffer emotional distress; and (4) that the emotional distress was severe. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006). "Whether a defendant's conduct is extreme and outrageous is a question of law." *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001) (quotation omitted). "To be extreme and outrageous, conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999) (quotation omitted).

With this heightened standard in mind, "courts have rejected claims asserting intentional infliction of emotional distress where defendants simply exercised rights owed under mortgage loan documents." *Garza v. Deutsche Bank Tr. Co. Ams.*, No. A-12-CV-741 LY, 2012 WL 13029409, at *6 (W.D. Tex. Oct. 24, 2012). *See also Auriti v. Wells Fargo Bank, N.A.*, No. 3:12-CV-334, 2013 WL 2417832, at *8 (S.D. Tex. June 3, 2013) ("The actions of a financial institution attempting to enforce its contractual right to foreclose on a deed of trust under which the homeowner has defaulted, without more, do not meet the high bar of 'outrageous' behavior."); *Baskett v. Pleasant*, 05-95-00271-CV, 1996 WL 135680, at *3 (Tex. App.—Dallas Mar. 27, 1996, writ denied) ("[Defendant] did

no more than insist on his legal rights as a noteholder and a landlord" by engaging in "proceedings incident to a default and subsequent foreclosure," which "cannot as a matter of law support a claim for intentional infliction of emotional distress."); *Wieler v. United Sav. Ass'n of Tex.*, 887 S.W.2d 155, 159 (Tex. App.—Texarkana 1994, writ denied) (holding that "a foreclosure sale that complies with the terms of the loan agreements and the applicable law would not justify a claim for intentional infliction of emotional distress").

Even assuming that foreclosure could qualify as extreme and outrageous behavior, Benjamin has not stated a plausible claim that Defendants instituted improper foreclosure proceedings.  As already addressed, Defendants' issuance of notice by certified mail satisfied the Security Instrument's directive.  The claim for intentional infliction of emotional distress against Defendants should be dismissed.

**K.     RESPA**

RESPA is a federal statute that provides an action for damages against mortgage-loan servicers who fail to respond to certain types of inquiries from borrowers.  In a section of the Second Amended Complaint labelled "Nominal Damages," Benjamin asserts a cause of action for Defendants' alleged RESPA violations.  The entirety of Benjamin's RESPA allegations are as follows: "Plaintiff is entitled to recover his nominal damages from Defendant associated with Plaintiff's cause of action for Violation of RESPA/Regulation X, for which Plaintiff plead in an amount which does not exceed the jurisdiction limits of this Court."  Dkt. 28 at 22.

Defendants ask that this claim be dismissed for two reasons.  First, Defendants argue that Benjamin "fails to identify any particular provision of RESPA that Defendants purportedly violated and fails to allege any facts in support of those claims."  Dkt. 42 at 19.  Second, Defendants argue that Benjamin has failed to allege how he was damaged by any purported RESPA violation.  These arguments are both valid and require dismissal of Benjamin's RESPA claim.  *See Green v. Carrington Mortg. Servs.*, LLC, No. A-14-CV-999-LY, 2014 WL 12874056, at *3 (W.D. Tex. Dec. 15, 2014) (dismissing RESPA claims for failure "to identify which portion of RESPA was allegedly violated, or the conduct by Defendants which constituted a violation" and failing to allege "how [plaintiff] was damaged by any purported violation of RESPA").

## L.    HWA and Donnelly

Finally, Defendants argue that HWA and Donnelly, the law firm and lawyer, respectively, who represented Bank of New York and Bayview in the state court foreclosure action, should be dismissed as parties from this proceeding because attorneys acting on behalf of their clients are immune from suit by the opposing party.  *See* Dkt. 42 at 27–28.  Attorneys are generally immune from civil liability to non-clients for actions taken as "part of the discharge of the lawyer's duties in representing his . . . client." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015) (quotation omitted).  *See also Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 406 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("[A]n attorney's conduct, even if frivolous or without merit, is not independently actionable if the conduct is part of the discharge of the lawyer's duties in representing his or her client."); *Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 288 (Tex.

App.—Fort Worth 1997, writ denied) ("Under Texas law, attorneys cannot be held liable for wrongful litigation conduct.").  The Texas Supreme Court has, however, indicated that (1) "an attorney's knowing commission of a fraudulent act outside the scope of his legal representation of the client is actionable;" and (2) "an attorney's participation in independently fraudulent activities is considered foreign to the duties of an attorney and is not shielded from liability." *Cantey Hanger, LLP*, 467 S.W.3d at 483 (quotations omitted).

Throughout the Second Amended Complaint, Benjamin repeatedly asserts that HWA and Donnelly lied to the state court judge by claiming that notice of default was sent by first class mail when it was actually sent by certified mail.  This is the only purported misrepresentation that Benjamin identifies.  Because certified mail is a form of first-class mail, these alleged statements are not misrepresentations.  From the face of the Second Amended Complaint, I can discern that HWA and Donnelly's conduct was within the scope of HWA and Donnelly's representation of Bank of New York and Bayview in the foreclosure case.  HWA and Donnelly have immunity from suit and should be dismissed from this case. *See Kelly v. Nichamoff*, 868 F.3d 371, 375 (5th Cir. 2017) ("Texas courts occasionally grant attorney immunity at the motion to dismiss stage [where] the scope of the attorney's representation—and thus entitlement to the immunity—[i]s apparent on the face of the complaint.").

## CONCLUSION

For the reasons set forth above, I recommend that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint Under Fed. R. Civ. P. 12(b)(6) (Dkt. 42) be **GRANTED** in part and **DENIED** in part.  Specifically, I recommend that the causes of

29

action for breach of contract, violations of Tex. Civ. Prac. & Rem. Code § 12.002(a), fraud, civil conspiracy, negligent misrepresentation, negligent undertaking, equitable estoppel, intentional infliction of emotional distress, and violations of RESPA be dismissed under Rule 12(b)(6). Benjamin's causes of action for quiet title, declaratory relief, and injunctive relief should survive the motion to dismiss. The quiet title claim is based on alleged violations of the Texas Constitution. The constitutional claim that passes muster under Rule 12(b)(6) relates to § 50(a)(6)(M)(i). The claims brought under §§ 50(a)(6)(E), 50(a)(6)(Q)(ix), 50(a)(6)(M)(ii), and 50(a)(6)(Q)(iii) are not sufficiently pled. And HWA and Donnelly should be dismissed entirely from this proceeding.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED on this 28th day of December 2020.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE