## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **KENNETH W. BENJAMIN,** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **Civil Action No.  4:20-cv-00214** |
| | § | |
| **THE BANK OF NEW YORK MELLON** | § | |
| **FKA THE BANK OF NEW YORK, AS** | § | |
| **TRUSTEE (CWALT 2005-J2),** | § | |
| **BAYVIEW LOAN SERVICING, LLC,** | § | |
| **HUGHES WATTERS ASKANASE, LLP** | § | |
| **& RACHEL DONNELLY,** | § | |
| **Defendants** | § | |

## <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW</u>

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ iii

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND........................................... 2

        A.  The Loan and Property at Issue in this Lawsuit.......................................... 2

        B.  The Bankruptcy Action ............................................................................... 4

        C.  Loan's Default and Foreclosure. ................................................................. 6

        D.  The Instant Action....................................................................................... 7

III.    SUMMARY JUDGMENT EVIDENCE AND STANDARD ............................... 8

        A.  Summary Judgment Evidence...................................................................... 8

        B.  Summary Judgment Standard....................................................................... 9

IV.     ARGUMENTS AND AUTHORITIES................................................................ 10

        A.  Bayview Has No Interest in the Loan or Property and Had No Involvement in
            the Origination of the Loan. ...................................................................... 10

        B.  Plaintiff's Claims are Barred By the Doctrine of Judicial Estoppel. ......... 11

            i.      Inconsistent Positions.................................................................... 12

            ii.     Acceptance by the Bankruptcy Court. ........................................... 12

            iii.    Failure to Disclose was not Inadvertent.......................................... 13

        C.  Plaintiff's Constitutionally-Based Claims are Without Merit.................... 15

            i.      TEX. CONST. art. XVI § 50(a)(6)(M)(i).......................................... 15

            ii.     Quiet title ...................................................................................... 21

            iii.    Declaratory Judgment. ................................................................... 21

D.  Plaintiff's Claim for Respondeat Superior Fails as a Matter of Law and Undisputed Fact. ................................................................................................ 22

E.  Because Plaintiff's Substantive Claims Fail as a Matter of Law and Fact, Plaintiff Is Not Entitled to Damages or Fees and Costs ................................... 23

V.  CONCLUSION ................................................................................................. 23

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................................................9

*Ayers v. Aurora Loan Services, L.L.C.*,
787 F.Supp.2d 451 (E.D. Tex. 2011)......................................................................22

*Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*,
179 F.3d 197 (5th Cir. 1999) .............................................................................12, 13

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1985)..................................................................................................9

*City of Farmers Branch v. Ramos*,
235 S.W.3d 462 (Tex. App.—Dallas 2007, no pet)................................................11

*Dill v. Fed. Home Loan Mortg. Corp.*,
No. CV H-19-4755, 2020 WL 7407135 (S.D. Tex. Dec. 17, 2020)......................2, 18, 19, 20

*Enochs v. Brown*,
872 S.W.2d 312 (Tex. App.—Austin 2003) ...........................................................17

*Equal Employment Opportunity Comm'n v. Rock-Tenn Servs. Co., Inc.*,
901 F. Supp. 2d 810 (N.D. Tex. 2012) ...................................................................13

*Erickson v. Wells Fargo Bank, N.A.*,
Nos. A-11-cv-722-LY, A-11-CV-780-LY, A-11-CV-781-LY.............................17

*Exxon Corp., v. Emerald Oil & Gas Co.*,
348 S.W.3d 194 (Tex. 2011)...................................................................................13

*In re Flugence*,
738 F.3d 126 (5th Cir. 2013) .............................................................................12, 13

*Ford v. Bank of New York Mellon as Trustee for CWABS, Inc. Asset-Backed
Certificates, Series
2007-2*, No. 6-18-CV-00299, 2019 WL 7759097 (W.D. Tex. Nov. 15, 2019) ......20

*Goodyear Tire & Rubber Co., v. Mayes*,
236 S.W.3d 745 (Tex. 2007)...................................................................................22

*In re H & R Block Fin. Advisors, Inc.*,
262 S.W.3d 896 (Tex. App.—Houston [14th Dist.] 2008)......................................11

iii

*Hutton v. Federal National Mortgage Association*,
No. 4:21-cv-00556, Doc. No. 16.................................................................................18

*Inge v. Bank of Am., N.A.*,
No. 4:17-CV-705, 2018 WL 4224918 (E.D. Tex. July 19, 2018) .........................................20

*Jethroe v. Omnova Sols., Inc.*,
412 F.3d 598 (5th Cir. 2005) ..............................................................11, 12, 13, 15

*Kane v. Nat'l Union Fire Ins. Co.*,
535 F.3d 380 (5th Cir. 2008) ......................................................................11, 12

*Kiggundu v. Mortgage Elec. Reg. Sys, Inc.*,
No. 4:11-1068, 2011 WL 2606359 (S.D. Tex. Jun. 30, 2011) ...............................................21

*Love v. Tyson Food, Inc.*,
677 F.3d 258 (5th Cir. 2012) ...........................................................11, 12, 15

*Moayedi v. Compaq Computer Corp.*,
98 F.App'x 335 (5th Cir. 2003) ..............................................................10

*In re Pirani*,
579 B.R. 396 (Bankr. E.D. Tex. 2017) ..........................................................16

*Port Arthur Rice Milling Co. v. Beaumont Rice Mills*,
143 S.W. 926 (1912).........................................................................13

*Priester v. JP Morgan Chase Bank, N.A.*,
708 F.2d 667 (5th Cir. 2013) *abrogated on other grounds by Wood v. HSBC
Bank USA, N.A.,* 505 S.W.3d 542 (Tex. 2016).........................................................14

*Priester v. Long Beach Mortg. Co.*,
No. 4:16-CV-449, 2018 U.S. Dist. LEXIS 158781 (E.D. Tex., Sept. 18, 2018)....................17

*Roberts v. Williamson*,
111 S.W.3d 113 (Tex. 2003).........................................................................17

*Salas v. LNV Corp.*,
409 S.W.3d 209. (Tex. App.—Houston [14th Dist.] 2013, no. pet.).......................................16

*Sid Richardson Carbon & Gasoline Co. v. Interenergy Res. Ltd.*,
99 F.3d 746 (5th Cir. 1996) ......................................................................22

*Sivertson v. Citibank, N.A. as Tr. for Registered Holders of WAMU Asset-Backed
Certificates WAMU Series 2007-HE2 Tr.*,
No. 4:18-CV-169, 2019 WL 2519222 (E.D. Tex. Apr. 22, 2019)..........................................20

*Superior Crewboats, Inc. v. Primary P&I Underwriters (In re Superior Crewboats, Inc.)*,
374 F.2d 330 (5th Cir. 2004) ...................................................................14

*Taylor v. Charter Med. Corp.*,
162 F.3d 827 (5th Cir. 1998) ...............................................................4, 6

*United States v. Lawrence*,
276 F.3d 193 (5th Cir. 2001) .................................................................10

*Wildy v. Wells Fargo Bank, NA*,
No. 3:12-CV-01831-BF, 2013 WL 246860 (N.D. Tex. Jan. 21, 2013)............................22, 23

**Statutes**

11 U.S.C. § 521 (a)(1)...........................................................................12

11 U.S.C. § 541(a)(1).............................................................................11

Tex. Civ. Prac. & Rem. Code § 12.002(a).......................................................7, 8

Tex. Civ. Prac. & Rem. Code § 37.001...........................................................22

**Other Authorities**

Fed. R. Evid. 201(b) ...........................................................................2, 4

Fed. R. Evid. 201(d) ........................................................................2, 4, 6

Fed. R. Civ. P. 56 ..........................................................................1, 9, 23

Fed. R. Civ. P. 12(b)(6)..........................................................................22

Tex. Const. art. XVI §§ 50(a)(6)(E), 50(a)(6)(Q)(ix), 50(a)(6)(M)(ii) and
50(a)(6)(Q)(iii)...............................................................................7, 8

Tex. Const. art. XVI § 50(a)(6)..............................................................3, 15

Tex. Const. art. XVI § 50(a)(6)(M)(i)........................................................7, 15

Tex. R. Civ. P. 736...............................................................................6

Pursuant to Federal Rule of Civil Procedure 56, Defendants the Bank of New York Mellon f/k/a The Bank of New York, as Trustee (CWALT 2005-J2) ("**BONYM**") and Bayview Loan Servicing, LLC ("**Bayview,**" and collectively with BONYM, the "**Defendants**") jointly move for summary judgment on Plaintiff Kenneth W. Benjamin's ("**Plaintiff**") Second Amended Petition (the "**Second Amended Complaint**" or "**Am. Pet.**") and would respectfully show the Court as follows:

## I.        INTRODUCTION

1.        Approximately seventeen years after the origination of his home equity loan and the receipt of $88,000.00, Plaintiff filed this lawsuit seeking to invalidate the lien on his property and recover other alleged damages.  At the closing of the loan, Plaintiff executed an affidavit in which he swore under oath that the loan complied with certain provisions of the Texas Constitution.  Plaintiff subsequently filed pleadings in a bankruptcy proceeding in which he represented to the bankruptcy court that the loan constituted a valid debt secured by the property and that none of the claims that Plaintiff now brings existed.  He received a discharge in his bankruptcy proceeding based on those representations.  Now, almost four years later, Plaintiff is contradicting his prior sworn statements in an attempt to get a windfall forfeiture of all principal and interest on the loan.  However, Plaintiff's claims are barred as a matter of law by the doctrine of estoppel and are also without merit.

2.        Because there is no genuine issue of material fact with respect to any of Plaintiff's claims, Defendants are entitled to final and complete summary judgment as a matter of law and the Court should issue a judgment against Plaintiff.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

**A.   The Loan and Property at Issue in this Lawsuit.**

3.     This lawsuit involves the real property that is owned by Plaintiff located at 15823 Kueben Ln., Missouri City, Texas 77489 (the "***Property***").

4.     On November 4, 2004, Plaintiff executed and submitted a Uniform Residential Loan Application (the "***Loan Application***," attached hereto as **Exhibit A-1**)[1] to New Alliance Mortgage, LLC for consideration of a loan secured by the Property.

5.     On the same day, Plaintiff received and executed the Notice Concerning Extensions of Credit (the "***Subsection (g) Notice***," attached hereto as **Exhibit A-2**).

6.     On November 24, 2004, Plaintiff obtained an extension of credit in the original amount of $88,000.00 (the "***Loan***") from New Alliance Mortgage, LLC, the terms of which are set forth in the Texas Home Equity Note (the "***Note,***" attached hereto as **Exhibit A-3**), the Texas Home Equity Security Instrument in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary (the "***Security Instrument***," attached hereto as **Exhibit A-4**),[2] and Texas Home Equity Affidavit and Agreement (the "***Home Equity Affidavit***," attached hereto as **Exhibit A-5**),[3] each executed by Plaintiff on November 24, 2004.

---

[1] Exhibits identified as Exhibit A-# are exhibits to the Declaration of Jo Ann Snyder (the "***PHH Decl.***"), which is attached hereto as **Exhibit A**.

[2] The Deed of Trust is a matter of public record, having been filed and recorded in the Official Public Records of Fort Bend County, Texas on December 17, 2004 under Doc. No. 2004152378. "Courts may take judicial notice of acts that are not subject to reasonable dispute in that they are either (1) generally known within the territorial jurisdiction or (2) capable of accurate determination by resort to sources whose accuracy cannot reasonably be questioned" pursuant to Fed. R. Evid. 201(b) and "shall" take judicial notice if requested by a party and supplied with the necessary information. Fed. R. Evid. 201(d).

[3] The Home Equity Affidavit is a matter of public record, having been filed and recorded in the Official Public Records of Fort Bend County, Texas on December 17, 2004 under Doc. No. 2004152379. "Courts may take judicial notice of acts that are not subject to reasonable dispute in that they are either (1) generally known within the territorial jurisdiction or (2) capable of accurate determination by resort to sources whose accuracy cannot reasonably be questioned" pursuant to Fed. R. Evid. 201(b) and "shall" take judicial notice if requested by a party and supplied with the necessary information. Fed. R. Evid. 201(d).

7.      In the Home Equity Affidavit, Plaintiff made the following representations, among others, which he swore under oath were true and correct:

- The Extension of Credit is secured by a voluntary lien on the Property created under a written agreement with the consent of all owners and all spouses of owners, and execution of this Texas Home Equity Affidavit and Agreement is deemed evidence of such consent.

- The Note and Security Instrument have not been signed before the twelfth (12th) day after the later of the date the owner of the Property submitted an application to the Lender, or the Lender's representative for the Extension of Credit, or the date that the Lender, or the Lender's representative provided the owner with a copy of the Notice Concerning Extensions of Credit defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Notice").

    Ex. A-5.

8.      On November 24, 2004, Plaintiff executed, among other documents, a Notice of Assignment, Sale or Transfer of Servicing Rights in which New Alliance Mortgage, Inc. notified Plaintiff that the servicing of the of the Loan was assigned, sold, or transferred to Flagstar Bank, F.S.B., effective January 1, 2005 (the "*Notice of Assignment, Sale or Transfer of Servicing Rights,*" attached hereto as **Exhibit A-6**).

9.      Of the $88,000.00 Loan, Plaintiff received $81,953.49 in cash as evidenced on the HUD-1 Settlement Statement provided in connection with the closing of the Loan (the "*HUD-1 Settlement Statement*," attached hereto as **Exhibit A-7).**

10.      The Note contains an indorsement from New Alliance Mortgage, LLC to Flagstar Bank, FSB and a subsequent indorsement in blank by Flagstar Bank, FSB.  Ex. A-3.

11.      On June 15, 2017, MERS assigned its rights and interest in the Property to The Bank of New York Mellon fka The Bank of New York as Trustee for the Certificateholders of

CWALT, Inc., Alternative Loan Trust 2005-J2, Mortgage Pass-Through Certificates, Series 2005-J2 (the "*Assignment,*" attached hereto as **Exhibit A-8**).[4]

12.     Bayview serviced the Loan for BONYM from January 16, 2018 until February 1, 2020 when it transferred the servicing rights to Shellpoint Mortgage Servicing.  Ex. A ¶ 14.

13.     Effective February 1, 2020, Bayview ceased to hold any interest in the Loan or Property.  Ex. A ¶ 15.

**B.     The Bankruptcy Action**

14.     On May 30, 2017, Plaintiff filed a Voluntary Petition for bankruptcy under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Case No. 17-33255 (the "*Bankruptcy Action*"). A true and correct copy of the docket and Petition filed in the Bankruptcy Action are attached hereto as **Exhibits B and C,** respectively.[5]

15.     Also on May 30, 2017, Plaintiff filed his bankruptcy schedules, a true and correct copy is attached hereto as **Exhibit D,**[6]  in which he represented that:

- there was a secured claim of $71,358.00 with respect to the Property (Schedule D);

- that the mortgage claim was not contingent, unliquidated, or disputed (Schedule D);

- that the debt was incurred on November 24, 2004 (Schedule D);

---

[4] The Assignment is a matter of public record, having been filed and recorded in the Official Public Records of Fort Bend, Texas on June 19, 2017 under Doc. No. 2017066926.  "Courts may take judicial notice of acts that are not subject to reasonable dispute in that they are either (1) generally known within the territorial jurisdiction or (2) capable of accurate determination by resort to sources whose accuracy cannot reasonably be questioned" pursuant to Fed. R. Evid. 201(b) and "shall" take judicial notice if requested by a party and supplied with the necessary information. Fed. R. Evid. 201(d).

[5] The Court may take judicial notice of the Petition and docket from the Bankruptcy Action and their contents because courts may take judicial notice of pleadings from other courts pursuant to Fed. R. Evid. 201 and "shall" take judicial notice if requested by a party and supplied with the necessary information. Fed. R. Evid. 201(d). Within the Fifth Circuit, courts may take judicial notice of documents filed in other courts for the purpose of establishing the fact o litigation and related filings.  *Taylor v. Charter Med. Corp.,* 162 F.3d 827, 831 (5th Cir. 1998).

[6] The Court may take judicial notice of Plaintiff's schedules filed in the Bankruptcy Action and their contents because courts may take judicial notice of pleadings from other courts pursuant to Fed. R. Evid. 201 and "shall" take judicial notice if requested by a party and supplied with the necessary information. Fed. R. Evid. 201(d). Within the Fifth Circuit, courts may take judicial notice of documents filed in other courts for the purpose of establishing the fact o litigation and related filings.  *Taylor v. Charter Med. Corp.,* 162 F.3d 827, 831 (5th Cir. 1998).

- that the value of his claimed exemption with regard to the Property was $90,000.00, consistent with his representation in Schedule A of the amount of equity he claimed to have in the Property (Schedule C); and

- that he did not have any other "contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor and rights to setoff claims." (Schedule A/B).

16.     Although Plaintiff filed an amended schedules on April 30, 2020, he did not amend any of the representations listed above in regard to Defendants or this Loan. *See* Ex. B (Bankruptcy Docket), Doc. 54-55.  In fact, Plaintiff amended his Schedule A/B specifically to include his claims against the Social Security Administration related to an alleged wrongful withholding, but did not make a representation as to any claims related to Defendants, the Property, or the Loan.

17.     On June 14, 2018, Bayview filed a motion for relief from the automatic stay as to the Property, asserting pre and post-petition arrearages of $10,468.51 and requesting permission to proceed with foreclosure.[7]  Plaintiff objected to the motion, asserting various grounds in support, including challenging the chain of title from New Alliance to BONYM, BONYM's standing to foreclose, and whether BONYM held the Note.[8]  Notably, in his responses, Plaintiff did not deny the amount of the arrears and did not allege the loan was invalid because it purportedly violated any of the Texas Constitution's provisions regarding home equity loan.   Bayview submitted further briefing in response to Plaintiff's objections.[9]  The bankruptcy court conducted hearings on the motion on July 12, 2018 and September 12, 2018.[10]

---

[7] *See* Exhibit B (Bankruptcy Docket), Doc.  33.
[8] *See* Exhibit B (Bankruptcy Docket), Doc. 34 (Plaintiff's Objection to Motion for Relief from Stay, pg. 7-14); *see also,* Exhibit B (Bankruptcy Docket), Doc. 36 (Plaintiff's Amended Objection to Motion for Relief from Stay, in which he asserted the stay should not be lifted because the Bankruptcy Case had "not yet been closed, dismissed, or discharged" and that the Property was still part of the bankruptcy estate).
[9] *See* Exhibit B (Bankruptcy Docket), Doc. 42.
[10] *See* Exhibit B (Bankruptcy Docket).

18.     On September 14, 2018, the bankruptcy court entered its Order Confirming Termination of Automatic Stay.  The court found that the automatic stay had been terminated by operation of law but "even if and to the extent the stay has not been terminated by operation of law this Court finds that cause exists for termination of the stay" and that Bayview, as servicer for BONYM, "may pursue its rights and remedies under Texas state law in connection with the property at 15823 Kueben Lane, Missouri City, Texas 77489 pursuant to the Texas Home Equity Note and Texas Home Equity Security Instrument."[11]

19.     On September 17, 2018, the bankruptcy court granted Plaintiff a discharge based on his representations in his schedules and other filings in the Bankruptcy Action.[12]

20.     Although the claims Plaintiff asserts in this lawsuit would have existed, if at all, when Plaintiff filed for bankruptcy, he did not disclose any such claims to the bankruptcy court in his schedules or in any other documents he filed with that Court.

**C.     Loan's Default and Foreclosure.**

21.     On April 26, 2019, BONYM filed an application under Texas Rule of Civil Procedure 736 in the 434th Judicial District Court of Fort Bend County, Texas, seeking an order allowing it to foreclose.  A copy of the docket from the 736 Action is attached here to as **Exhibit E.**[13]

22.     On October 17, 2019, the Court granted the 736 Application, but on January 6, 2020, the Court vacated the order granted the 736 Application after the filing of the instant suit. *Id.*

---

[11] *See* Exhibit B (Bankruptcy Docket), Doc. 44 (Order Confirming Termination of Automatic Stay).
[12] Exhibit B (Bankruptcy Docket), Doc. 45.
[13] The Court may take judicial notice of the docket from the 736 Action and its contents because courts may take judicial notice of pleadings from other courts pursuant to Fed. R. Evid. 201 and "shall" take judicial notice if requested by a party and supplied with the necessary information. Fed. R. Evid. 201(d). Within the Fifth Circuit, courts may take judicial notice of documents filed in other courts for the purpose of establishing the fact o litigation and related filings.  *Taylor v. Charter Med. Corp.,* 162 F.3d 827, 831 (5th Cir. 1998).

23.     To date, a substitute trustee's sale of the Property has not occurred.  Ex. A ¶ 16.

**D.     The Instant Action.**

24.     On December 19, 2019, Plaintiff filed his *Original Petition, Application for Temporary Restraining Order, Temporary Injunction, and Request for Disclosures* in the 434th Judicial District Court of Fort Bend County, Texas, Cause No. 19-DCV-269619 in an effort to stall the foreclosure sale scheduled for January 7, 2020.[14]

25.     Defendants removed the matter to this Court on January 21, 2020.[15]

26.     Plaintiff filed his First Amended Petition on January 27, 2020.[16]

27.     On April 13, 2020, the Court granted Plaintiff's motion to amend his complaint (Doc. 24), and on April 20, 2020, Plaintiff filed his Second Amended Complaint. Doc. 28.

28.     In his Second Amended Complaint, Plaintiff asserts causes of action for breach of contract, violations of §§ 50(a)(6)(M)(i), 50(a)(6)(e), 50(a)(6)(Q)(ix), 50(a)(6)(M)(ii), and 50(a)(6)(Q)(iii) of TEX. CONST. art. XVI, violations of Tex. Civ. Prac. & Rem. Code § 12.002(a), fraud, civil conspiracy, negligent misrepresentation, negligent undertaking, equitable estoppel, intentional infliction of emotional distress, violations of RESPA, quiet title, declaratory relief, and injunctive relief against BONYM, Bayview, Hughes Watters Askanase, LLP ("***HWA***"), and Rachel Donnelly ("***Donnelly***").  Doc. 28.

29.     On May 29, 2020, Defendants filed a motion to dismiss the Second Amended Complaint.  Doc. 42.  On June 15, 2020, Plaintiff filed his Opposition to the Motion to Dismiss. Doc. 51.

---

[14] *See* Original Petition, attached as Exhibit A to Defendants' Notice of Removal, Doc. 1-1.
[15] *See* Notice of Removal, Doc. 1.
[16] *See* First Amended Petition, Doc. 4.

30.    On December 28, 2020, the Magistrate issued its Memorandum and Recommendation, in which he recommended a dismissal of all claims asserted against HWA and Donnelly and as to Defendants, he recommended a dismissal of Plaintiff's claims for breach of contract, violations of Tex. Civ. Prac. & Rem. Code § 12.002(a), fraud, civil conspiracy, negligent misrepresentation, negligent undertaking, equitable estoppel, intentional inflection of emotional distress, violation of RESPA.   Doc. 80.  The Magistrate further found that Plaintiff's claims for violation of the Tex. Const. art. XVI §§ 50(a)(6)(E), 50(a)(6)(Q)(ix), 50(a)(6)(M)(ii) and 50(a)(6)(Q)(iii) were not sufficiently pled.   *Id.*   The only remaining claims according to the Magistrate's Recommendation were Plaintiff's claims for quiet title based on a violation of § 50(a)(6)(M)(i), declaratory and injunctive relief.   *Id.*

31.    On January 12, 2021, Plaintiff filed his Objection to the Magistrate's Recommendation.  Doc. 81.

32.    On January 13, 2021, this Court adopted the Magistrate's Recommendation.  Doc. 82.

33.    On August 5, 2021, Counsel for Defendants conducted a deposition of Plaintiff (the "***Plaintiff's Depo.***").  A true and correct copy of cited excerpts from Plaintiff's Depo. are attached hereto as **Exhibit F.**

### III.    SUMMARY JUDGMENT EVIDENCE AND STANDARD

#### A.    Summary Judgment Evidence

34.    In support of this motion, Defendants rely upon and incorporate herein by reference the following evidence:

Exhibit A        Declaration of Jo Ann Snyder

Exhibit A-1    Loan Application
Exhibit A-2    Subsection (g) Notice
Exhibit A-3    Note

Exhibit A-4     Security Instrument
Exhibit A-5     Home Equity Affidavit
Exhibit A-6     Notice of Assignment, Sale or Transfer of Servicing Rights
Exhibit A-7     HUD 1-Settlement Statement
Exhibit A-8     Assignment

Exhibit B       Bankruptcy Action Docket

Exhibit C       Bankruptcy Action Petition

Exhibit D       Bankruptcy Schedules

Exhibit E       Docket from 736 Action

Exhibit F       Excerpts from Plaintiff's Deposition Transcript

**B.     Summary Judgment Standard**

35.     The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.[17]  Federal Rule of Civil Procedure 56 permits any party to a civil action to move for summary judgment on a claim, counterclaim, or cross-claim for which there is no genuine dispute as to any material fact and upon which the moving party is entitled to judgment as a matter of law.[18]  A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine dispute as to any material fact.[19]  The movant need only show the absence of evidence to support a claim on issues to which the non-movant bears the ultimate burden of proof at trial.[20]  Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted.[21]  The non-moving party must then set forth specific facts showing the existence of a genuine issue for trial.[22]  The non-moving party must adduce affirmative evidence.[23]  No "mere denial of material facts nor…unsworn allegations [nor]

---

[17] *See Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1985).
[18] FED. R. CIV. P. 56.
[19] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[20] *Id*. at 323-24.
[21] *Id*. at 324-25.
[22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).
[23] *Id.*

arguments and assertions in briefs or legal memoranda" will suffice to carry this burden.[24]   Rather, the Court requires "significant probative evidence" from the non-movant in order to dismiss a request for summary judgment supported appropriately by the movant.[25]   Plaintiff cannot meet this burden here.

## IV.     ARGUMENTS AND AUTHORITIES

36.     The Court should grant summary judgment in favor of Defendants because all of Plaintiff's claims are barred by the doctrine of judicial estoppel or because the summary judgment evidence demonstrates that Plaintiff's claims fail as a matter of law and undisputed fact.

### A.     Bayview Has No Interest in the Loan or Property and Had No Involvement in the Origination of the Loan.

37.     The live claims in Plaintiff's Second Amended Petition stem from conduct taken (or not taken) at the origination of the Loan.   As the summary judgment evidence demonstrates, Bayview's sole role in relation to Plaintiff's Loan was as the Loan's servicer from January 16, 2018 until February 1, 2020.[26]   It is undisputed that Bayview had no involvement with the origination of the Loan and has never held title to the Property.[27]   In fact, Bayview ceased to have any interest in the Loan or Property as of February 1, 2020.[28]   Because Bayview had no involvement in the origination of the Loan, Plaintiff's Section 50(a)(6) claim which is based on allegations related to the Loan Application and Subsection (g) Notice is improperly asserted against Bayview.   Similarly because Bayview never held title to the Property, Plaintiff's quiet title and declaratory judgment claims which Plaintiff challenges title to the Property are improperly asserted against Bayview.

---

[24] *Moayedi v. Compaq Computer Corp.,* 98 F.App'x 335, 338 (5th Cir. 2003).
[25] *United States v. Lawrence,* 276 F.3d 193, 197 (5th Cir. 2001).
[26] Ex. A ¶ 14.
[27] Exs. A-1 through A-8.
[28] Ex. A ¶ 15.

38.     Because Bayview was not involved in the origination of the Loan and has never held title to the Property, which form the basis of Plaintiff's claims and related requests for injunctive and declaratory relief, a judgment in Plaintiff's favor and against Bayview would have no practical legal effect, which is the very definition of mootness.[29]   Accordingly, the Court should grant Defendants' motion and enter judgment for Bayview and against Plaintiff's Second Amended Petition in its entirety, as there is no genuine issue of material fact precluding judgment in Bayview's favor.

**B.     Plaintiff's Claims are Barred By the Doctrine of Judicial Estoppel.**

39.     Plaintiff's claims are barred as a matter of law by judicial estoppel because of the representations Plaintiff made in his bankruptcy proceeding.  "[J]udicial estoppel is a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position.'"[30]   When a bankruptcy petition is filed, all of a debtor's asserts, including causes of action, vest in the bankruptcy estate.[31]   The Bankruptcy Code and bankruptcy rules impose upon debtors an "express, affirmative duty to disclose all assets, including contingent and unliquidated claims."[32]   The Fifth Circuit has noted that the "integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets.'"[33]   "The disclosure requirement pertains to potential" claims, as well as existing claims.[34]   As a result, the Fifth Circuit has repeatedly held that judicial estoppel applies to bar a debtor's claims when the debtor fails to disclose claims to a bankruptcy court, but then later pursues those undisclosed claims in a separate

---

[29] *See In re H & R Block Fin. Advisors, Inc.*, 262 S.W.3d 896, 900 (Tex. App.—Houston [14th Dist.] 2008); *City of Farmers Branch v. Ramos*, 235 S.W.3d 462, 469 (Tex. App.—Dallas 2007, no pet).

[30] *Jethroe v. Omnova Sols., Inc.,* 412 F.3d 598, 600 (5th Cir. 2005) (quoting *Browning Mfg. v. Mims (In re Coastal Plains, Inc.),* 179 F.3d 197, 205 (5th Cir. 1999)).

[31] *See* 11 U.S.C. § 541(a)(1); *Kane v. Nat'l Union Fire Ins. Co.,* 535 F.3d 380, 384-85 (5th Cir. 2008).

[32] *Love v. Tyson Food, Inc.,* 677 F.3d 258, 261 (5th Cir. 2012) (citing *Coastal Plains,* 179 F.3d at 207-08).

[33] *Love,* 677 F.3d at 261 (quoting *Coastal Plains, Inc.,* 179 F.3d at 208).

[34] *Id.*

court.[35]  Moreover, a debtor is under a continuing duty to disclose all pending and potential claims to the bankruptcy court pursuant to the bankruptcy code.[36]

40.    In determining whether to apply the doctrine of judicial estoppel, courts in Texas consider whether "(1) the position of the party against which estoppel is sought is plainly inconsistent with its prior legal position; (2) the party against which estoppel is sought convinced a court to accept the prior position; and (3) the party did not act inadvertently."[37] Each of those elements is satisfied in this case.

### i.    Inconsistent Positions.

41.    A person asserts an inconsistent position in a later-filed case if, during his/her bankruptcy proceeding, he/she fails to list the claims in the bankruptcy schedules.[38]  Applying that rule here, Plaintiff has taken an inconsistent position in this case because he did not disclose any of the constitutionally-based claims in his bankruptcy schedules, including those he amended after receiving a discharge.   Because Plaintiff had a duty under the Bankruptcy Code and bankruptcy rules to disclose the potential claims in his schedules, the Fifth Circuit treats his failure to do so as an implicitly representation that no claims exist.[39]   Thus, Plaintiff's representation to the bankruptcy court that she did not have any claims against Defendants is plainly inconsistent with Plaintiff's assertion of the constitutionally-based claims in this lawsuit.

### ii.    Acceptance by the Bankruptcy Court.

---

[35] *Id.;* see also *Jethroe*, 412 F.3d at 600 ("Judicial estoppel is particularly appropriate where, as here, a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset").

[36] *Kane v. Nat'l Union Fire Ins. Co.,* 535 F.3d 380, 384-85 (5th Cir. 2008); *see also* 11 U.S.C. § 521 (a)(1).

[37] *Jethroe,* 412 F.3d at 601-02.

[38] *Coastal Plains, Inc.,* 179 F.3d at 207-08.

[39] *See In re Flugence,* 738 F.3d 126, 130 (5th Cir. 2013)("Because [the plaintiff] had an affirmative duty to disclose her….claim to the bankruptcy court and did not do so, she impliedly represented that she had no such claim.  That is plainly inconsistent with her later assertion of the claim in state court.").

42.     As explained by the Fifth Circuit, "judicial acceptance…does not mean that the party against whom the judicial estoppel doctrine is to be invoked must have prevailed on the merits. Rather, judicial acceptance means only that the first court has accepted the position urged by the party, either as a preliminary matter or as part of a final disposition."[40]  A bankruptcy court accepts a party's representations on the bankruptcy schedules when it confirms a debtor's plan or discharges a debtor's debts in connection with the debtor's representations or omissions.[41]  Here. Plaintiff was granted a discharge in his Chapter 7 bankruptcy proceeding on September 17, 2018, although he had not disclosed on his schedules the claims he now asserts in this lawsuit.[42] Accordingly, the bankruptcy court accepted Plaintiff's prior inconsistent position.

### iii.     Failure to Disclose was not Inadvertent.

43.     A debtor's failure to disclose is inadvertent only if the debtor lacked knowledge of the undisclosed claims or had no motive to conceal them from the bankruptcy court.[43]  "'The controlling inquiry, with respect to inadvertence, is the knowing of facts giving rise to the inconsistent positions…A lack of awareness of a statutory disclosure duty for []legal claims is not relevant.'"[44]

44.     Under Texas law, "[c]auses of action accrue…when facts come into existence that authorize a claimant to seek a judicial remedy."[45] Stated differently, "the accrual of the cause of action means the right to institute and maintain a suit."[46]  In the case of a quiet title action regarding

---

[40] *Browning,* 179 F.3d at 206.
[41] *See, e.g., Jethroe,* 412 F.2d at 600 (acceptance upon plan confirmation); *Hamilton State Farm Fire & Cas., Co*., 270 F.3d 778, 784 (9ᵗʰ Cir. 2001)(acceptance upon discharge).
[42] Exs. B, D.
[43] *Jethroe,*  412 F.3d at 600-01.
[44] *Flugence,* 738 F.2d at 130-31 (quoting *Jethroe,* 412 F.3d at 601 n.4); *see also Equal Employment Opportunity Comm'n v. Rock-Tenn Servs. Co., Inc.,* 901 F. Supp. 2d 810, 830 (N.D. Tex. 2012)("A lack of awareness, even if a bankruptcy attorney fails to inform [a debtor] of [the debtor's] duty to disclose, does not however, equate to inadvertence.")(citing *Coastal* Plains, Inc., 179 F.3d at 212).
[45] *Exxon Corp., v. Emerald Oil & Gas Co.,* 348 S.W.3d 194, 202 (Tex. 2011).
[46] *Port Arthur Rice Milling Co. v. Beaumont Rice Mills,* 143 S.W. 926, 928 (1912).

an unconstitutionally void lien, a claim accrues at the moment the defective lien is created, i.e. origination.[47]

45.     Plaintiff clearly had knowledge of the facts giving rise to the undisclosed claims before he received a discharge.[48]  As discussed above, the alleged facts would have existed at the time of closing, which undisputedly occurred on November 24, 2004, approximately thirteen years before Plaintiff filed for bankruptcy protection on May 30, 2017.[49]

46.     Plaintiff also had a motive to conceal the existence of his claims.  A debtor is deemed to have sufficient motivation to conceal a claim where he stood to "reap a windfall had they been able to recover on the undisclosed claim without having disclosed it to the creditors."[50] Thus, "the motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court.  Motivation in this context is self-evidence because of potential financial benefit resulting from the nondisclosure."[51]  By receiving a discharge, Plaintiff was relieved from paying \$34,816.40 to creditors holding unsecured claims.[52]  By failing to disclose Plaintiff's constitutionally-based claims, Plaintiff never gave the Chapter 7 trustee the opportunity to pursue the claims for the benefit of those creditors.  If Plaintiff was to now recover on his claims in this lawsuit, he would reap a windfall by not having to distribute his recovery to his creditors, who were never advised in the bankruptcy proceeding of the existence of the claims.

---

[47] *Priester v. JP Morgan Chase Bank, N.A.,* 708 F.2d 667, 675 (5th Cir. 2013) *abrogated on other grounds by Wood v. HSBC Bank USA, N.A.,* 505 S.W.3d 542 (Tex. 2016) ("a lien that was invalid from origination remains invalid until it is cured.").

[48] In fact, Plaintiff sought to designate himself as an expert in this matter, based in large part on the fact that he has been studying the documents related to his loan *since 2004*. *See* Ex. F, Plaintiff's Depo. 104:12-105:3.

[49] Ex. A-3, Ex. A-4, Ex. B, Ex. C.

[50] *Superior Crewboats, Inc. v. Primary P&I Underwriters (In re Superior Crewboats, Inc.),* 374 F.2d 330, 336 (5th Cir. 2004).

[51] *Id.* (citation omitted).

[52] *See* Ex. D (Schedules E/F).

That is precisely the type of conduct and injustice against which the doctrine of judicial estoppel is designed to protect.[53]

47.     Accordingly, as a result of Plaintiff's non-disclosure of the constitutionally-based claims in the bankruptcy proceeding, Plaintiff is judicially estopped from asserting those claims in this lawsuit and this Court should apply judicial estoppel and grant summary judgment in favor of Defendants on all claims.

### C.     Plaintiff's Constitutionally-Based Claims are Without Merit.

48.     Even if Plaintiff's claims are not barred as a matter of law by judicial estoppel, they fail because they are meritless.

### i.     TEX. CONST. art. XVI § 50(a)(6)(M)(i).

49.     Section (50)(a)(6)(M)(i) requires an extension of credit be closed not before "the 12th day after the later of the date that the owner of the homestead submits a loan application to the lender for the extension of credit or the date that the lender provides the owner a copy of the notice prescribed by Subsection (g) of this section."[54]

50.     Plaintiff alleges that the Loan closed less than 12 days after the original loan application was submitted to the lender.[55]  However, at closing, Plaintiff swore under oath in the Home Equity Affidavit, a document that was part of the closing on the extension of credit,[56] that:

- The Note and Security Instrument have not been signed before the twelfth (12th) day after the later of the date the owner of the Property submitted an application to the Lender, or the Lender's representative for the Extension of Credit, or the date that the Lender, or the Lender's representative provided the owner with a copy of the Notice Concerning Extensions of Credit defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Notice"). Ex. A-5.

---

[53] *See Love,* 677 F.2d at 260-63; *Jethroe,* 412 F.3d at 600.
[54] Tex. Const. art. XVI § 50(a)(6)(M)(i).
[55] Am. Compl. ¶ 28(b).
[56] *See* Ex. A-5  ("I understand that this Texas Home Equity Affidavit and Agreement is part of the Extension of Credit documentation.").

51.     Therefore, Plaintiff should be estopped from perjuring himself by now claiming, approximately seventeen years later, that his sworn statement was false, especially when considering that the Plaintiff appears to have also been dishonest with his creditors and the bankruptcy court.  Accordingly, the doctrine of estoppel by contract bars Plaintiff's constitutionally-based claims.

52.     Estoppel by contract "preclude[s] a person from asserting, to another's disadvantage, a right inconsistent with a position previously taken."[57]

53.     The elements of estoppel by contract are: "(1) the party being estopped acquiesced to or benefited from a position inconsistent with his present position; (2) it would be unconscionable to allow the party being estopped to maintain his present position; and (3) the party being estopped had knowledge of all material facts at the time of the conduct on which estoppel is based."[58]

54.     Here, the HUD-1 Settlement Statement evidences that the majority of the Loan proceeds were distributed to Plaintiff in the form of cash, which he testified he used for "commodity trading"; thus, Plaintiff clearly accepted the benefit of Loan from New Alliance.[59]

55.     Plaintiff executed the Home Equity Affidavit, which states that the Loan was closed in the appropriate time frame.[60]  Plaintiff now, after accepting the benefit of the extension of credit, argues contrary to the Home Equity Affidavit that the Loan closed less than 12 days after the submission of the Loan Application or his receipt of the required Subsection (g) Notice.  Because Plaintiff has already been accepted the benefit of the Loan, it is unconscionable that he now be

---

[57] *Salas v. LNV Corp.,* 409 S.W.3d 209, 217 n.2. (Tex. App.—Houston [14th Dist.] 2013, no. pet.)(citing *Forney 921 Lot Dev. Partners, I, L.P. v. Paul Taylor Homes, Ltd.,* 349 S.W.3d 258, 268 (Tex.App.—Dallas 2011, pet denied)).
[58] *In re Pirani,* 579 B.R. 396, 406 (Bankr. E.D. Tex. 2017).
[59] Ex. A-7; Plaintiff testified at his deposition that he used the funds from the Loan to "do some trading, commodity trading." Ex. F, Plaintiff's Depo. 16:23-24.
[60] Ex. A-5.

allowed to challenge the validity of the extension of credit.[61]  Finally, Plaintiff is presumed to have

had knowledge of all material facts at the time he signed the Home Equity Affidavit.[62]  Because

the doctrine of estoppel by contract applies and bars Plaintiff's claims, the Court should grant

summary judgment in favor of Defendants.

56.     The doctrine of equitable estoppel also bars Plaintiff's constitutionally-based

claims.  To invoke the doctrine of equitable estoppel, a party must prove: (1) a false representation

or concealment of material fact; (2) made with knowledge, actual or constructive, of the facts; (3)

to a party without knowledge or the means of knowledge of the real facts; (4) with the intention

that it should be acted upon; and (5) the party to whom it was made must have relied upon or acted

upon it to his prejudice.[63]

57.     All of the estoppel elements are satisfied in this case.  Although this Court was

hesitant to consider the sworn statements of the Home Equity Affidavit at the motion to dismiss

stage, the Court should consider them now and find that because the Home Equity Affidavit

contradicts his claim that the affidavit controls.[64]

58.     If the Loan was in fact closed less than 12 days after the submission of the Loan

Application or receipt of the Subsection (g) Notice, then Plaintiff's sworn representations to the

---

[61] *Enochs v. Brown,* 872 S.W.2d 312, 317 (Tex. App.—Austin 2003) *disapproved of on other grounds by, Roberts v. Williamson,* 111 S.W.3d 113 (Tex. 2003).

[62] "If no fraud is involved, one who signs an agreement without knowledge of its contents is presumed to have consented to its terms and is charged with knowledge of the agreement's legal effect; in those circumstances, a party's failure to read an instrument before signing it is not a ground for avoiding it." *Priester v. Long Beach Mortg. Co.,* No. 4:16-CV-449, 2018 U.S. Dist. LEXIS 158781 at *13 (E.D. Tex., Sept. 18, 2018) (quoting *Sosa v. Long Beach Mortg. Co.,* No. 03-06-00326-CV, 2007 Tex. App. LEXIS 4640, at *3 (Tex. App.—Austin 2007, no pet.).

[63] *Erickson v. Wells Fargo Bank, N.A.,* Nos. A-11-cv-722-LY, A-11-CV-780-LY, A-11-CV-781-LY, Chp. 7 Case No. 09-11933, Adv. No. 09-1135, 2012 WL 4434740, at 8 (W.D. Tex. Sept. 24, 2012)(citing *Gulbenkian v. Penn,* 252 S.W.2d 929, 932 (Tex. 1952)).

[64] *Priester,* 2018 U.S. Dist. LEXIS 158781 at *36 (plaintiffs alleging home equity loan did not comply with Texas Constitution were estopped from asserting facts that contradicted their home equity affidavit executed at the origination of the loan).

contrary in the Home Equity Affidavit were clearly false, and Plaintiff necessarily would have known the representations were false because he was at the closing.

59.     With respect to the remaining elements, the Home Equity Affidavit provides:

> I understand that my execution of this Texas Home Equity Affidavit and Agreement is made to induce Lender and its successors and assigns to make or purchase the Extension of Credit, and that Lender and its assigns will rely on it as additional consideration for making or purchasing the Extension of Credit. I also understand that each of the statements made in the Representations and Warranties section is material and will be acted upon by the Lender and its assigns, and that if such statement is false or made without knowledge of the truth, the Lender and its assigns will suffer injury.
>
> Ex. A- 5.

60.     This statement clearly shows Plaintiff's representations were made to BONYM, who is the assignee of New Alliance with respect to the Loan.  It also explicitly expresses Plaintiff's intent that Defendants would act upon Plaintiff's representations concerning the timeframe of closing.  Moreover, as assignee of the Loan, BONYM did not participate in the closing of the Loan, so it could not have had any knowledge or the means of knowing the timeframe between the receipt of the Loan Application (or the Subsection (g) Notice) and the closing date other than Plaintiff's sworn representations in the Home Equity Affidavit[65]

61.     The Magistrate declined to consider the Home Equity Affidavit at the Motion to Dismiss stage of these proceedings,[66] but as Chief Judge Rosenthal recently indicated in another matter, summary judgment is the appropriate time to evaluate a Home Equity Affidavit.[67]

---

[65] Ex. A-5.
[66] *See* Memorandum and Recommendation, Doc. No. 80, pg. 11.
[67] *See Hutton v. Federal National Mortgage Association*, No. 4:21-cv-00556, Doc. No. 16, pgs. 7-8, (S.D. Tex., April. 23, 2021); *see also Dill v. Fed. Home Loan Mortg. Corp.*, No. CV H-19-4755, 2020 WL 7407135, at *3 (S.D. Tex. Dec. 17, 2020).

62.     Furthermore, the Chief Judge correctly notes that "…a borrower's sworn, signed closing documents ***trump later conflicting allegations and affidavits***…"[68] This is the situation present before the Court, as Plaintiff has nothing more than his word that only application submitted was submitted on the day of closing. His own Home Equity Affidavit and the documentary evidence demonstrate that is *not* the case.

63.     Accordingly, Plaintiff should be estopped from contradicting the sworn statements in his Home Equity Affidavit which establishes that the Loan was closed at least 12 days after receipt of the Loan Application by the Lender or Plaintiff's receipt of the Subsection (g) Notice, both of which bear Plaintiff's signature and are dated November 4, 2004.[69]

64.     Furthermore, the summary judgment evidence establishes that Plaintiff executed the Loan Application on November 4, 2004 and it was submitted on the same day.[70] Not only did Plaintiff sign the Loan Application on November 4, 2004, but a representative of New Alliance also signed it on November 4, 2004.[71] Despite Plaintiff's allegation that he did not submit the Loan Application at least more than 12 days before closing, he testified at his deposition that he did sign *some* documents on November 4, 2004, which is baffling if the Court accepts Plaintiff's allegation that he had not yet submitted the Loan Application.[72]

---

[68] *Id*. (Emphasis added).
[69] Ex. A-1, A-2.
[70] *See* Ex. A ¶ 7; Ex. A-1.
[71] *Id.*
[72] Plaintiff admits that he signed the Notice to Applicant of Right to Receive Copy of Appraisal Report (Exhibit 13 to Depo Transcript) dated October 25, 2004 on November 4, 2004:

   Q: this is dated October 25, 2004; correct?
   A: Correct
 …
   Q: And it appears to be signed by you on November, 2004, correct?
….
   A: I signed it.

Plaintiff Depo. 83:12-84:9.

65.     The Plaintiff would have the Court believe that he walked into a title company the day he decided he wanted a home equity loan and that he submitted his application and closed on his loan that very day.[73] However, Plaintiff's claim is directly contradicted by his own testimony that he *did sign documents prior to closing*,[74] and by the very existence of the documents that were created and signed before November 24, 2004.

66.     Plaintiff has no evidence other than his own pleadings and testimony that demonstrate the November 4, 2004 Application, the Home Equity Affidavit, and the other pre-November 4, 2004 documents are forged or fraudulent. In such a scenario, the documents and prior Affidavit control.[75] This is not a case where Plaintiff has an affidavit from a friendly mortgage broker acknowledging that the loan closed the same day Plaintiff applied for it.[76] Plaintiff is simply changing his story from what he swore to be true at closing to avoid paying back a valid loan.

---

Plaintiff admits that he signed the Servicing Disclosure Statement. (Exhibit 20 to Depo Transcript) on November 4, 2004:

    Q: I'll represent to you that this is supposed to say "Servicing Disclosure Statement.": Do you see that, sir?
    A: I see it.
    Q: Okay. And if we scroll down to the bottom, we can see where it appears to have your signature dated November 4, 2004, correct?
    A: Correct.

Plaintiff's Dep: 120:3-130-10.
[73] *See* Ex. F, Plaintiff's Dep: 117:13-19. ("·Q.· · ·Okay.· So it's your testimony that the illogical thing happens here, which is that you submitted a loan application on November 24th, and that very same day, you signed the note and security instrument; and even though you acknowledged that's illogical, you think that's what happened? A.· · ·Yes.· I'm going to go with that.").
[74] *See* FN. 72.
[75] *See Sivertson v. Citibank, N.A. as Tr. for Registered Holders of WAMU Asset-Backed Certificates WAMU Series 2007-HE2 Tr.*, No. 4:18-CV-169, 2019 WL 2519222, at *5 (E.D. Tex. Apr. 22, 2019) ("Plaintiff cannot defeat summary judgment based on his own self-serving affidavit, given the contrary evidence. Defendant's objection is sustained as to those statements by Plaintiff contained in [his] Affidavit which contradict the Home Equity Affidavit."); *Inge v. Bank of Am., N.A.*, No. 4:17-CV-705, 2018 WL 4224918, at *14 (E.D. Tex. July 19, 2018) ("The conclusory statements that Plaintiffs failed to receive the closing documents without any other factual support, and [one plaintiff's] unsupported attestation that his signature is not the signature on the Receipt produced by Defendant fail to present a genuine issue worthy of trial in the instant case.").
[76] *See Dill v. Fed. Home Loan Mortg. Corp.*, No. CV H-19-4755, 2020 WL 7407135, at *5 (S.D. Tex. Dec. 17, 2020); *Ford v. Bank of New York Mellon as Trustee for CWABS, Inc. Asset-Backed Certificates, Series 2007-2,* No. 6-18-CV-00299, 2019 WL 7759097, at *3 (W.D. Tex. Nov. 15, 2019).

67.     Accordingly, Plaintiff should be estopped from contradicting his sworn statement in the Home Equity Affidavit, which establishes that the closing took place at least 12 days following Plaintiff's submission of Loan Application or receipt of the Subsection (g) Notice.

### ii.     Quiet title

68.     Plaintiff's quiet title claim is based entirely on his contention that the Loan should be voided under the Texas Constitution.[77]  Because the Loan complied with the Texas Constitution and because Plaintiff's claim seeking to void the Lien is barred as a matter of law by estoppel, his claim for quiet title likewise fails.  But even if the Loan did not comply with certain provisions of the Texas Constitution, Plaintiff cannot prove a superior claim to the Property as supported by Defendants' summary judgment evidence.

69.     To recover on a claim to quiet title, Plaintiff must prove that he has superior title to the Property over the Defendants.[78]  "The pleading rules are detailed and formal, and require a plaintiff to prevail on the superiority of his title, not on the weakness of a defendant's title."[79]

70.     Here, there is no valid legal or factual basis for Plaintiff to assert he holds a superior title to the Property over BONYM, as the public record establishes BONYM was the assignee of the Security Instrument and the lien has not been released.[80]  In addition, Plaintiff concedes that BONYM owns the Loan.[81]  Accordingly, Plaintiff's quiet title claim fails as a matter of law and undisputed fact, and the Court should grant summary judgment in favor of Defendants and against Plaintiff's quiet title claim.

### iii.     Declaratory Judgment.

---

[77] Am. Compl. ¶ 35.
[78] *See Kiggundu v. Mortgage Elec. Reg. Sys, Inc.*, No. 4:11-1068, 2011 WL 2606359, at *7 (S.D. Tex. Jun. 30, 2011) (citing *Rogers v. Ricane Enters.*, 884 S.W.2d 763, 768 (Tex. 1994)).
[79]   *Id*. at *3 (quoting *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004) (citation omitted)).
[80] Exs. A-4, A-5.
[81] Am. Compl. ¶ 21.

71.     Based on his faulty theory that BONYM's lien is void due to violations of the Texas Constitution, Plaintiff seeks a declaratory judgment that "Defendants unable to foreclose on the home."[82]  Plaintiff further seeks a declaratory judgment that the Note be "declared void or paid due to forfeiture of principal and interest."[83]  Finally, Plaintiff requests that Defendants are "enjoined from the future sale of the property."[84]

72.     Given the absence of a viable substantive claim, Plaintiff is not entitled to declaratory or injunctive relief.[85]  Under Texas law, a request for injunctive or declaratory relief is not itself a cause of action; rather, it depends on an underlying cause of action.[86]  Because Plaintiff does not state a plausible claim for relief against Defendants, Plaintiff is not entitled to the declaratory or injunctive relief he seeks in the Complaint.  Accordingly, the Court should deny Plaintiff's requests for declaratory and injunctive relief with prejudice.

**D.     Plaintiff's Claim for Respondeat Superior Fails as a Matter of Law and Undisputed Fact.**

73.     The Court should enter summary judgment in favor of Defendants and against Plaintiff's claim for respondeat superior because respondeat superior is a doctrine of liability and is not properly plead as a separate cause of action.[87]  Because each of Plaintiff's substantive claims against Defendants fail as a matter of law and undisputed fact, as discussed above, Defendants cannot be held liability to Plaintiff under a theory of respondeat superior.

---

[82] Am. Compl. ¶ 36.

[83] Am. Compl. ¶ 38.

[84] Am. Compl. ¶ 47-48.

[85] *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res. Ltd.,* 99 F3d 746, n.3 (5th Cir. 1996) ("The Texas Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code 37.001 is merely a procedural device; it does not create any substantive rights or causes of action."); *Ayers v. Aurora Loan Services, L.L.C.,* 787 F.Supp.2d 451, 457 (E.D. Tex. 2011)(where Plaintiff failed to state a claim for trespass to try title and to quiet title, Plaintiff's claims for declaratory and injunctive relief were also subject to dismissal under Rule 12(b)(6)).

[86] *Wildy v. Wells Fargo Bank, NA,* No. 3:12-CV-01831-BF, 2013 WL 246860, at *6 (N.D. Tex. Jan. 21, 2013) (citing *Brown v. Ke-Ping Xie,* 260 S.W.3d 118, 122 (Tex. Civ. App.—Houston [1st Dist.] 2008, no pet.)).

[87] *See Goodyear Tire & Rubber Co., v. Mayes,* 236 S.W.3d 745, 757 (Tex. 2007).

**E.     Because Plaintiff's Substantive Claims Fail as a Matter of Law and Fact, Plaintiff Is Not Entitled to Damages or Fees and Costs.**

74.     The Court should also grant summary judgment against Plaintiff's requests for actual damages, statutory damages, treble damages, exemplary damages, and his research and legal fees as outlined in the Prayer of the Second Amended Complaint because Plaintiff's underlying claims fail as a matter of law and undisputed fact as discussed above.

75.     Under Texas law, claims for damages and attorney's fees depend on an underlying cause of action.[88] Without an underlying claim on which to base his requests for damages and attorney's fees, Plaintiff is not entitled to recover damages or attorney's fees as a matter of law.[89] Accordingly, the Court should grant summary judgment in Defendants' favor as to Plaintiff's request for damages and fees and costs.

## V.     CONCLUSION

For the reasons stated herein, the Court should grant Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and enter a final judgment in favor of Defendants and against Plaintiff's Second Amended Complaint.

Respectfully submitted,

By:   */s/ Matt D. Manning*
　　　**MATT D. MANNING**
　　　State Bar No. 24070210
　　　**KATHRYN B. DAVIS**
　　　State Bar No. 24050364
　　　**MCGLINCHEY STAFFORD**
　　　1001 McKinney, Suite 1500
　　　Houston, Texas 77002
　　　Telephone :  (713) 520-1900
　　　Facsimile:   (713) 520-1025
　　　mmanning@mcglinchey.com
　　　kdavis@mcglinchey.com

---

[88] *Wildy v. Wells Fargo Bank, NA*, No. 3:12-CV-01831-BF, 2013 WL 246860, at *6 (N.D. Tex. Jan. 21, 2013) (citing *Brown v. Ke-Ping Xie*, 260 S.W.3d 118, 122 (Tex. App.- Houston [1st Dist.] 2008, no pet.)).
[89] *Id.*

*Attorneys for Defendants The Bank of New York Mellon f/k/a the Bank of New York as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-J2, Mortgage Pass-Through Certificates, Series 2005-J2, Bayview Loan Servicing, LLC, Hughes Watters Askanase, LLP, and Rachel Donnelly*

## CERTIFICATE OF SERVICE

I hereby certify that on  September 3, 2021, a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing has been forwarded to all parties in accordance with the FEDERAL RULES OF CIVIL PROCEDURE.

*Via U.S. first class mail, U. S. Certified Mail, RRR, Email and/or CM/ECF Service System*
Kenneth W. Benjamin
15823 Kueben Lane
Missouri City, Texas 77489
*Plaintiff Pro Se*

/s/ Matt D. Manning
MATT D. MANNING