United States District Court
Southern District of Texas
**ENTERED**
December 07, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KENNETH W. BENJAMIN, § | |
| § | |
| Plaintiff. § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:20-CV-00214 |
| § | |
| THE BANK OF NEW YORK § | |
| MELLON, ET AL., § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is Defendants' Motion for Summary Judgment. *See* Dkt. 143. After reviewing the motion, the voluminous summary judgment briefing, and the applicable law, I **RECOMMEND** that the motion be **GRANTED**, and this case be dismissed.

### BACKGROUND

On November 24, 2004, Plaintiff Kenneth W. Benjamin ("Benjamin") obtained an $88,000 home equity loan to purchase property located at 15823 Kueben Lane, Missouri City, Texas, 77489 (the "Property"). The loan documents included a Texas Home Equity Note ("Note"), a Texas Home Security Instrument ("Security Instrument"), and a Texas Home Equity Affidavit ("Home Equity Affidavit"). The Bank of New York Mellon ("Bank of New York") is the current holder of the Note and the Security Instrument.

After Benjamin fell behind on his mortgage payments and then emerged from bankruptcy, Bank of New York filed judicial proceedings seeking an order allowing it to foreclose on the Property. A foreclosure sale was scheduled for January 7, 2020. To stop the foreclosure sale from occurring, Benjamin filed the instant lawsuit in the 434th Judicial District Court of Fort Bend County, Texas, on December 19, 2019. As a result of this lawsuit, the state court judge overseeing the

foreclosure proceedings vacated the foreclosure sale one day before it was set to take place.

Defendants Bank of New York and Bayview Loan Servicing, LLC ("Bayview") timely removed the action to this Court. The live pleading is Plaintiff's "Second Amended Petition" ("Second Amended Complaint"). In that pleading, Benjamin asserts causes of action for violations of the Texas Constitution, improper acceleration of loan, breach of contract, suit to remove cloud and quiet title, declaratory judgment, injunctive relief, statutory fraud, fraud, civil conspiracy, negligent misrepresentation, negligent undertaking, equitable estoppel, intentional infliction of emotional distress, and violations of the Real Estate Settlement Procedures Act. The defendants identified in the Second Amended Complaint are Bank of New York; Bayview; Hughes Watters Askanase, LLP ("HWA"); and Rachel Donnelly ("Donnelly").

Defendants moved to dismiss the lawsuit for failure to state a claim upon which relief can be granted. On December 28, 2020, I issued a lengthy Memorandum and Recommendation in which I recommended that all claims against HWA and Donnelly be dismissed, and most of the claims against Bank of New York and Bayview be dismissed. *See* Dkt. 80. Based on my ruling, the only claims surviving the pleading stage consisted of a quiet title claim centered on an alleged violation of the 12-day rule set forth in TEX. CONST. art. XVI, § 50(a)(6)(M)(i) and claims for declaratory and injunctive relief dependent on an alleged violation of § 50(a)(6)(M)(i). On January 13, 2021, Judge George C. Hanks, Jr. adopted my Memorandum and Recommendation in its entirety. *See* Dkt. 82.

The parties then had a full opportunity to conduct discovery. At the close of the discovery period, Bank of New York and Bayview filed the instant Motion for Summary Judgment, advancing a number of arguments why this case should be dismissed as a matter of law. First, Bayview argues that it should be dismissed from this case because it has no interest in the subject loan and nor any involvement in its origination. Second, Bank of New York and Bayview argue that Benjamin's

claims are barred by the doctrine of judicial estoppel because of representations made by Benjamin in his bankruptcy proceedings. Third, Bank of New York and Bayview contend that Benjamin's constitutional claim under § 50(a)(6)(M)(i) is without merit. Because I find the third argument—that the constitutional claim fails as a legal matter—dispositive, I need not address the other reasons for dismissal raised by Bank of New York and Bayview.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *See Rodriguez v. Webb Hosp. Corp.*, 234 F. Supp. 3d 834, 837 (S.D. Tex. 2017)

To survive summary judgment, the nonmovant must "present competent summary judgment evidence to support the essential elements of its claim." *Cephus v. Tex. Health & Hum. Servs. Comm'n*, 146 F. Supp. 3d 818, 826 (S.D. Tex. 2015). The nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quotation omitted). Rather, the "nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015). In ruling on a motion for summary judgment, I must construe "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).

## PRELIMINARY OBJECTIONS

Before I tackle the substance of the Motion for Summary Judgment, I need to address various objections made by Bank of New York and Bayview.

3

First, Bank of New York and Bayview move to strike a number of the exhibits Benjamin relies on in opposing summary judgment. *See* Dkt. 148 at 2–5. The specific documents at issue are Plaintiff's Exhibits AA47–AA48, AA52–AA53, AA57, and AA61–AA62 (the "Contested Exhibits"). Bank of New York and Bayview contend that these exhibits are not accompanied by an affidavit or declaration, do not comply with the Federal Rules of Evidence, and are not competent summary judgment evidence. "At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form." *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017). Instead, to be considered on summary judgment, materials must be of a type that can be "presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2). After reviewing the Contested Exhibits, I am convinced that such documents could be presented in an admissible form at trial. Accordingly, I overrule the evidentiary objections.

Next, Bank of New York and Bayview move to strike a document titled "Plaintiff's Reply to Defendants' Reply Brief in Support of the Motion for Summary Judgment and Motion to Strike," claiming that this pleading is an impermissible sur-reply. *See* Dkt. 155. Benjamin asserts that his pleading is not a sur-reply, but rather an opposition to Bank of New York and Bayview's motion to strike certain of his summary judgment exhibits. Although I am loath to allow sur-replies, I do agree with Benjamin that he should be given an opportunity to respond to evidentiary objections raised by Bank of New York and Bayview. As such, the Motion to Strike Plaintiff's Sur-Reply (Dkt. 155) is denied.

Finally, Bank of New York and Bayview have filed a Motion to Strike and Exclude Plaintiff's Untimely Affidavit. Dkt. 153. In that motion, Bank of New York and Bayview ask me to strike an affidavit Benjamin filed on the grounds that it is untimely, consists of conclusory allegations, and contains inadmissible hearsay. The affidavit in question is short and sweet: it merely seeks to authenticate the Contested Exhibits. Because I have already determined that the Contested Exhibits will be considered as part of the summary judgment record, the effort to strike

4

Benjamin's affidavit is of no moment. As such, the motion to strike the affidavit is denied as moot.

I now turn to the underlying merits of the summary judgment motion.

## ANALYSIS

A suit to quiet title "is an equitable action that involves *clearing* a title of an invalid charge against the title." *Longoria v. Lasater*, 292 S.W.3d 156, 165 n.7 (Tex. App.—San Antonio 2009, pet. denied) (quotation omitted). To prevail on a quiet-title claim, Benjamin must establish: "(1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." *Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet. denied). As the plaintiff, Benjamin "has the burden of supplying the proof necessary to establish his superior equity and right to relief." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Section 50(a)(6), Article XVI of the Texas Constitution lists requirements that home equity loans must meet for a lender to have a valid lien on a borrower's homestead property. *See* TEX. CONST. art. XVI, § 50(a)(6). In support of his quiet-title claim, Benjamin claims that the mortgage lien on the Property is invalid because the loan he obtained did not comply with the Texas Constitution's 12-day rule found in § 50(a)(6)(M)(i).

The Texas Constitution's 12-day rule provides that a home equity loan cannot close until either 12 days after the borrower submits the loan application *or* 12 days after the borrower receives a § 50(g) notice, whichever is later. *See* TEX. CONST. art. XVI, § 50(a)(6)(M)(i). A § 50(g) notice details certain home equity loan requirements mandated by the Texas Constitution. *See id*. § 50(g).

Benjamin's claim that the lien is invalid because the loan violates the Texas Constitution's 12-day rule fails, as a matter of law, because his sworn statement in the Home Equity Affidavit provides uncontroverted evidence that the loan was

5

constitutionally compliant. In the Home Equity Affidavit Benjamin signed on November 24, 2004, he swore that:

> The Note and Security Instrument have not been signed before the twelfth (12th) day after the later of the date the owner of the Property submitted an application to the Lender, or the Lender's representative for the Extension of Credit, or the date that the Lender, or the Lender's representative provided the owner with a copy of the Notice Concerning Extensions of Credit defined by Section 50(a)(6), Article XVI of the Texas Constitution.

Dkt. 42-3 at 3. Benjamin now claims this statement, which he provided under oath, was false. Benjamin conveniently fails to provide any explanation for his changed position.

The law is crystal clear: Benjamin cannot avoid summary judgment merely by contradicting the sworn statements he made in the Home Equity Affidavit. *See Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) ("[A] party cannot create a genuine issue of fact . . . simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn [testimony]) without explaining the contradiction or attempting to resolve the disparity."). As a general rule, a borrower's sworn statements at closing "are *conclusive* on issues of compliance with the [Texas] Constitution's home equity provisions, regardless of later allegations that the statements were false." *Inge v. Bank of America, N.A.*, No. 4:17-CV-705, 2018 WL 4224918, at *14 (E.D. Tex. July 19, 2018) (emphasis added). In recent years, court after court has reiterated this well-settled legal principle. *See, e.g., Sivertson v. Citibank, N.A.*, 390 F. Supp. 3d 769, 778 (E.D. Tex. 2019) (dismissing a quiet-title claim on summary judgment because the "Plaintiff signed an affidavit attesting to the fair market value of the Property, and further swearing that such value and the amount of the Loan did not violate the Texas Constitution."); *Sierra v. Ocwen Loan Servicing, LLC*, No. CIV.A. H-10-4984, 2012 WL 527940, at *5 (S.D. Tex. Feb. 16, 2012) (granting summary judgment on alleged violation of the Texas Constitution's home equity loan requirements because plaintiffs' "self-serving and

after-the-fact affidavits [were] contradicted by numerous documents that they signed contemporaneously indicating that they did in fact receive copies of relevant documents during the loan process.").

A number of courts have found that a genuine issue of material fact exists when a plaintiff submits a self-serving affidavit claiming noncompliance with the Texas Constitution's home equity provisions <u>and</u> additional proof of noncompliance. For example, in *Ford v. Bank of New York Mellon*, the borrower signed a home equity affidavit as part of the loan transaction that indicated that the closing took place at the lender's office, an attorney's office, or the title company's office. No. 6-18-CV-00299, 2019 WL 7759097, at *3 (W.D. Tex. Nov. 15, 2019). In opposing summary judgment, the borrower presented her own affidavit claiming that the closing actually took place at her home. *See id.* The borrower also submitted "the affidavit of a separate individual who was present at the time and place the documents were closed specifically for the purpose of observing and notarizing the transaction." *Id.* These "sworn statements of two separate individuals present at the time of closing create[d] a fact issue that preclude[d] summary judgement." *Id.* In another case, *Dill v. Federal Home Loan Mortgage Corp.*, the borrower "submitted not only her own affidavit [claiming that the closing took place at her home], but also a log from the notary who witnessed [her] sign the loan documents and an affidavit from the notary." No. CV H-19-4755, 2020 WL 7407135, at *5 (S.D. Tex. Dec. 17, 2020). The *Dill* court found a genuine issue of material fact as to where the closing documents were signed. *See id.*

This case is nothing like *Ford* or *Dill*. Benjamin has not submitted any evidence indicating that his sworn statement should be disregarded. In fact, the summary judgment record is devoid of *any* sworn statement made by Benjamin in which he contends that the loan closed less than 12 days after he submitted the loan application. Benjamin does assert in various pleadings that he did not receive timely notice, but it is well-established that unverified pleadings do not "constitute competent summary judgment evidence." *King v. Dogan*, 31 F.3d 344, 346 (5th

7

Cir. 1994). *See also Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 307 (5th Cir. 2020) ("The party opposing summary judgment must go beyond the pleadings and identify specific evidence in the record showing that there is a genuine issue for trial."). In short, Benjamin has presented no competent summary judgment evidence that provides any basis for me to ignore the representations he made in the Home Equity Affidavit. Benjamin cannot now, 17 years after making sworn statements that the loan complied with certain provisions of the Texas Constitution, change his tune without any additional proof of noncompliance.

By way of a declaration submitted under oath by a designated representative, Bank of New York and Bayview allege that Benjamin applied for a loan on November 4, 2004, and that he received the § 50(g) notice the same day. Interestingly enough, Benjamin readily admits that he applied, telephonically, for a loan on November 4, 2004. *See* Dkt. 146-1 at 8 (referring numerous times to a November 4, 2004 "TELEPHONE application"); Dkt. 152 at 13 ("[T]he November 4, 2004 application was a TELEPHONE application."). However, Benjamin argues that telephonic application did not start the 12-day clock because "the lender converted the TELEPHONE application into [a] fraudulent paper application" (replete with errors) and forged Benjamin's signature. Dkt. 146-1 at 8. Benjamin maintains that the 12-day waiting period did not begin to run until November 24, 2004, the date he purportedly submitted a "legitimate" <u>written</u> loan application. *See id.*

Putting aside the fact there is no competent summary judgment evidence supporting this theory, Benjamin's claim fails even if everything he says is true. The Fifth Circuit has expressly held that "the broad term 'application' . . . in § 50(a)(6)(M)(i) . . . encompass[es] oral applications, including telephonic applications." *Cerda v. 2004-EQR1 L.L.C.*, 612 F.3d 781, 788 (5th Cir. 2010). Thus, the date upon which Benjamin claims he submitted a written loan application is immaterial; the 12-day waiting period began to run on November 4, 2004, when Benjamin submitted a telephonic application and was provided the § 50(g) notice.

8

All sides agree that the loan closed on November 30, 2004—which is obviously more than 12 days after Benjamin made the oral loan application. There is simply no violation of the Texas Constitution's 12-day waiting period.

Because Benjamin's quiet-title claim is based entirely on his contention that the loan violated § 50(a)(6)(M)(i), my determination that there is no violation of § 50(a)(6)(M)(i) is fatal. His requests for declaratory and injunctive relief likewise fail in the absence of a viable underlying cause of action. *See Lucky Tunes #3, L.L.C. v. Smith*, 812 F. App'x 176, 184 (5th Cir. 2020). Accordingly, Bank of New York and Bayview are entitled to judgment as a matter of law.

## CONCLUSION

For the reasons set forth above, I recommend that Defendants' Motion for Summary Judgment (Dkt. 143) be **GRANTED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED on this 7th day of December 2021.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE