IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

*December 16, 2021*

Nathan Ochsner, Clerk of Court

KENNETH W. BENJAMIN,

Plaintiff

v.                                              Civil Action No. 4:20-cv-00214

THE BANK OF NEW YORK MELLON

et all

**PLAINTIFF'S  OBJECTIONS  TO**

**JUDGE EDISON'S  MEMORANDUM  AND RECOMMENDATION  (Dkt 163)**

Dear Judge Hanks:

With the submittal of Judge Edison's M&R (Dkt 163), I am expecting that you'll be adopting in full his M&R.  That means this aspect of my lawsuit will come to an end and be dismissed due to the Magistrate recommending it be dismissed.

Since this will likely be my last opportunity to address your court before you dismiss my case, I wanted to make a short preamble before getting to the specific objections  of this M&R.

Judge,  do you play poker?  If you do, then you know in that card game there's the rule that says  if you want to see the cards of the other player, you've got to **pay** to see them.

1

I will be appealing your dismissal of my lawsuit because, among other reasons, my curiosity is killing me to find out what the response is to my challenges to the objections stated in this M&R (Dkt 163), AND ALSO, to the objections stated in the M&R (Dkt 80). Since your court is unwilling to provide a response to any of the challenges I've made, I must get the responses from the 5th Circuit Court.

My desire for getting a response is so strong, I am willing to **pay** the $505(?) appeals filing fee just to "see" (using the poker analogy) what the explanations are to the objection challenges I've made.  It's my understanding that the 5th Circuit Court is very open, transparent, and accommodating about revealing their responses to litigant challenges.

If you're wondering …..... "How can I know in advance that you'll be dismissing my case?" Ha! That's an easy one, Judge ….. you've already told me!

Consider this ..…. in your "ORDER OVERRULING OBJECTION TO MAGISTRATE JUDGE'S ORDER" (Dkt 141), you wrote that you've …

> *…. got to be "highly deferential" and "you should affirm the decision of the magistrate judge unless on the entire evidence you are left with a definite and firm conviction that a mistake has been committed."*

Judge, as a pro se litigant, I know my limitations.  I know I do not have the skills, knowledge, or experience,[1] that can convince you to be "left with a definite and firm conviction" that a seasoned, United States Magistrate Judge has committed a mistake. That being the case ….. logic says you'll be dismissing my case.

Besides, you have adopted the Magistrate's M&R once before (Dkt 82).  Your de novo analysis found nothing amiss there.  Logic says this will be repeated for Dkt 163. Therefore, you'll be dismissing my case.

---

[1] Proof of my lack of skills/knowledge/experience can be seen in the fact that out of a total of 12 causes of action claims I've submitted, **ALL** of them were dismissed (Dkts 80, 163).  That fact indicates to me that my chances of convincing you that the Magistrate Judge has made a mistake is somewhere between  none and  impossible.

To paraphrase a quote from that master of deductive reasoning, Sherlock Holmes …..
"It's elementary, my dear ~~Watson~~ Judge Hanks".  ☺

End of preamble.

++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

Below, Judge Hanks, you'll find my response to Judge Edison's Memorandum and Recommendation (M&R) (Dkt 163).

As is my usual practice, I have copied the Magistrate Judge's M&R in its entirety, exactly as it was submitted.  From that copy, I've gone thru the M&R sentence-by-sentence, inserting my comments where necessary.  My comments  are placed in ***"bold, underlined, italicized"*** font to be easily recognized.

***"Response commencing now …….."***

MEMORANDUM AND RECOMMENDATION

Pending before me is Defendants' Motion for Summary Judgment. See Dkt. 143. After reviewing the motion, the voluminous summary judgment briefing, and the applicable law, I RECOMMEND that the motion be GRANTED, and this case be dismissed.

BACKGROUND

On November 24, 2004, Plaintiff Kenneth W. Benjamin ("Benjamin") obtained an $88,000 home equity loan to purchase property located at 15823 Kueben Lane, Missouri City, Texas, 77489 (the "Property").

***"The home equity loan was not used to purchase any property.  Plaintiff had already purchased that property in the 1970's.***

The loan documents included a Texas Home Equity Note ("Note"), a Texas Home Security Instrument ("Security Instrument"), and a Texas Home Equity Affidavit ("Home

Equity Affidavit"). The Bank of New York Mellon ("Bank of New York") is the current holder of the Note and the Security Instrument.

After Benjamin fell behind on his mortgage payments and then emerged from bankruptcy …...

> *"Plaintiff fell behind on his mortgage payments when the Social Security Administration improperly took from Plaintiff $6,000.  The loss of that $6,000 forced Plaintiff to go into Chapter 7 bankruptcy, and, to sue for the recovery of that money."*

…... Bank of New York filed judicial proceedings seeking an order allowing it to foreclose on the Property.

> *"The Bank of New York's judicial proceedings documents contained major defects, including  …..*
>
> - *illegal acceleration of the loan (Dkt 31),*
> - *non-compliance with Rule 736 (Expedited Foreclosure Proceedings) (Dkt 17)*
> - *knowingly used fraudulent court documents (Exhibit C3, D4),*
> - *made misrepresentations to the state court (Dkt 100, RFAs  2,3,4,5,6)*
> - *violated state and federal foreclosure laws* [2]  *(Dkt 17)*

A foreclosure sale was scheduled for January 7, 2020. To stop the foreclosure sale from occurring, Benjamin filed the instant lawsuit in the 434th Judicial District Court of Fort Bend County, Texas, on December 19, 2019. As a result of this lawsuit, the state court judge overseeing the foreclosure proceedings vacated the foreclosure sale one day before it was set to take place.

Defendants Bank of New York and Bayview Loan Servicing, LLC ("Bayview") timely removed the action to this Court. The live pleading is Plaintiff's "Second Amended

---

[2] See Huston v. U.S. Bank Nat. Ass'n, 988 F.Supp.2d 732, 740 (S.D. Tex. 2013), aff'd, 583 F. App'x. 306 (5th Cir. 2014) (citing Tex. Prop. Code 51.002).

To foreclose under a security instrument in Texas with a power of sale, the lender must demonstrate that ….(1) a debt exists; (2) the debt is secured by a lien created under Art.16, 50(a)(6) of the Texas Constitution; (3) plaintiffs are in default under the note and security instrument; and (4) plaintiffs **received notice of default** and acceleration.

Petition" ("Second Amended Complaint").  In that pleading, Benjamin asserts causes of action for violations of the Texas Constitution, improper acceleration of loan, breach of contract, suit to remove cloud and quiet title, declaratory judgment, injunctive relief, statutory fraud, fraud, civil conspiracy, negligent misrepresentation, negligent undertaking, equitable estoppel, intentional infliction of emotional distress, and violations of the Real Estate Settlement Procedures Act. The defendants identified in the Second Amended Complaint are Bank of New York; Bayview; Hughes Watters Askanase, LLP ("HWA"); and Rachel Donnelly ("Donnelly").

Defendants moved to dismiss the lawsuit for failure to state a claim upon which relief can be granted. On December 28, 2020, I issued a lengthy Memorandum and Recommendation in which I recommended that all claims against HWA and Donnelly be dismissed, and most of the claims against Bank of New York and Bayview be dismissed. See Dkt. 80.

Based on my ruling, the only claims surviving the pleading stage consisted of a quiet title claim centered on an alleged violation of the 12-day rule set forth in TEX. CONST. art. XVI, § 50(a)(6)(M)(i) and claims for declaratory and injunctive relief dependent on an alleged violation of § 50(a)(6)(M)(i).

*__"(#1) - Plaintiff has shown though Summary Judgement evidence that in 2004, when Plaintiff signed his loan agreement, § 50(a)(6)(M)(i) did not exist.__*

*__"(#2) - In 2004 § 50(a)(6)(M) was the article in force (see Dkt 143-3).__*

*__"(#3) - In 2007 § 50(a)(6)(M)(i) came into force.__*

On January 13, 2021, Judge George C. Hanks, Jr. adopted my Memorandum and Recommendation in its entirety. See Dkt. 82.

The parties then had a full opportunity to conduct discovery.

*__"The above sentence is false ......__*

*"(#1) - Dkts 133, 134, 135, 137, 140, & 147 shows how Judge Edison prevented Plaintiff from getting a deposition from both the Bank of New York and the Bayview defendants.*

*"(#2) - Judge Edison determined Plaintiff gave Defendants an unreasonable "2 days" to prepare themselves before the discovery deadline."*

*"(#3) - It is noteworthy to point out that Judge Edison was the one responsible for developing the deadlines in the Docket Control Order (Dkt 87)."*

*"(#4) - In the interest of fairness to the Plaintiff, the Judge could have easily extended the discovery deadline a few more days without any adverse effect on the case docket …. just like he extended the deadlines in his "Order to Abate The Trial Setting And Pre-Trial Deadlines" in his Dkt 162.*

*"(#5) - It is Plaintiff's contention that the act of preventing Plaintiff from conducting a deposition of the two Defendants was another example of judicial bias encountered in this case.   That bias has greatly prejudiced Plaintiff by making him unable to fully develop his case."*

At the close of the discovery period, Bank of New York and Bayview filed the instant Motion for Summary Judgment, advancing a number of arguments why this case should be dismissed as a matter of law. First, Bayview argues that it should be dismissed from this case because it has no interest in the subject loan and nor any involvement in its origination. Second, Bank of New York and Bayview argue that Benjamin's

claims are barred by the doctrine of judicial estoppel because of representations made by Benjamin in his bankruptcy proceedings. Third, Bank of New York and Bayview contend that Benjamin's constitutional claim under § 50(a)(6)(M)(i) is without merit. Because I find the third argument—that the constitutional claim fails as a legal matter—dispositive, I need not address the other reasons for dismissal raised by Bank of New York and Bayview.

SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. See Rodriguez v. Webb Hosp. Corp., 234 F. Supp. 3d 834, 837 (S.D. Tex. 2017)

To survive summary judgment, the nonmovant must "present competent summary judgment evidence to support the essential elements of its claim." Cephus v. Tex. Health & Hum. Servs. Comm'n, 146 F. Supp. 3d 818, 826 (S.D. Tex. 2015). The nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005) (quotation omitted). Rather, the "nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim." Brooks v. Houston Indep. Sch. Dist., 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015). In ruling on a motion for summary judgment, I must construe "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." Cadena v. El Paso Cnty., 946 F.3d 717, 723 (5th Cir. 2020).

PRELIMINARY OBJECTIONS

Before I tackle the substance of the Motion for Summary Judgment, I need to address various objections made by Bank of New York and Bayview.

First, Bank of New York and Bayview move to strike a number of the exhibits Benjamin relies on in opposing summary judgment. See Dkt. 148 at 2–5. The specific documents at issue are Plaintiff's Exhibits AA47–AA48, AA52–AA53, AA57, and AA61–AA62 (the "Contested Exhibits"). Bank of New York and Bayview contend that these exhibits are not accompanied by an affidavit or declaration, do not comply with the Federal Rules of Evidence, and are not competent summary judgment evidence. "At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form." Maurer v. Indep. Town, 870 F.3d 380, 384 (5th Cir. 2017). Instead, to be considered on summary judgment, materials must be of a type that can be "presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

After reviewing the Contested Exhibits, I am convinced that such documents could be presented in an admissible form at trial. Accordingly, I overrule the evidentiary objections.

Next, Bank of New York and Bayview move to strike a document titled "Plaintiff's Reply to Defendants' Reply Brief in Support of the Motion for Summary Judgment and Motion to Strike," claiming that this pleading is an impermissible sur-reply. See Dkt. 155. Benjamin asserts that his pleading is not a sur-reply, but rather an opposition to Bank of New York and Bayview's motion to strike certain of his summary judgment exhibits. Although I am loath to allow sur-replies, I do agree with Benjamin that he should be given an opportunity to respond to evidentiary objections raised by Bank of New York and Bayview. As such, the Motion to Strike Plaintiff's Sur-Reply (Dkt. 155) is denied.

Finally, Bank of New York and Bayview have filed a Motion to Strike and Exclude Plaintiff's Untimely Affidavit. Dkt. 153. In that motion, Bank of New York and Bayview ask me to strike an affidavit Benjamin filed on the grounds that it is untimely, consists of conclusory allegations, and contains inadmissible hearsay. The affidavit in question is short and sweet: it merely seeks to authenticate the Contested Exhibits. Because I have already determined that the Contested Exhibits will be considered as part of the summary judgment record, the effort to strike Benjamin's affidavit is of no moment. As such, the motion to strike the affidavit is denied as moot.

I now turn to the underlying merits of the summary judgment motion.

ANALYSIS

A suit to quiet title "is an equitable action that involves clearing a title of an invalid charge against the title." Longoria v. Lasater, 292 S.W.3d 156, 165 n.7 (Tex. App.—San Antonio 2009, pet. denied) (quotation omitted). To prevail on a quiet title claim, Benjamin must establish: "(1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." Vernon v. Perrien, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet. denied). As the plaintiff, Benjamin "has the burden of supplying the

proof necessary to establish his superior equity and right to relief." Hahn v. Love, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Section 50(a)(6), Article XVI of the Texas Constitution lists requirements that home equity loans must meet for a lender to have a valid lien on a borrower's homestead property. See TEX. CONST. art. XVI, § 50(a)(6).

In support of his quiet title claim Benjamin claims that the mortgage lien on the Property is invalid because the loan he obtained did not comply with the Texas Constitution's 12-day rule found in § 50(a)(6)(M)(i).

> *"The above sentence is not correct …….*
>
> *"#1 - Benjamin is claiming that the mortgage lien on the Property is invalid because the loan he obtained did not comply with the 2004 version of the Texas Constitution's 12-day rule found in § 50(a)(6)(M) (see Dkt 143-3).*
>
> *"#2 - There is a significant difference in the wording between the 2004 version of § 50(a)(6)(M) and today's version of § 50(a)(6)(M)(i)*
>
> *"#3 - § 50(a)(6)(M) is the paragraph that was in force when Benjamin signed his loan in 2004.*
>
> *"#4 - § 50(a)(6)(M)(i) came into existence in 2007 ……. which was AFTER Benjamin signed his loan in 2004.*

The Texas Constitution's 12-day rule provides that a home equity loan cannot close until either 12 days after the borrower submits the loan application or 12 days after the borrower receives a § 50(g) notice, whichever is later. See TEX. CONST. art. XVI, § 50(a)(6)(M)(i).

> *"(#1) -  § 50(a)(6)(M)(i) did NOT exist in 2004 --- it arrived in 2007.*
>
> *"(#2) - In 2004, Benjamin was under § 50(a)(6)(M) (see Dkt 143-3)*

A § 50(g) notice details certain home equity loan requirements mandated by the Texas Constitution. See id. § 50(g).

Benjamin's claim that the lien is invalid because the loan violates the Texas Constitution's 12-day rule fails, as a matter of law, because his sworn statement in the Home Equity Affidavit provides uncontroverted evidence that the loan was constitutionally compliant. In the Home Equity Affidavit Benjamin signed on November 24, 2004, he swore that:

> The Note and Security Instrument have not been signed before the twelfth (12th) day after the later of the date the owner of the Property submitted an application to the Lender, or the Lender's representative for the Extension of Credit, or the date that the Lender, or the Lender's representative provided the owner with a copy of the Notice Concerning Extensions of Credit defined by Section 50(a)(6), Article XVI of the Texas Constitution.

Dkt. 42-3 at 3. Benjamin now claims this statement, which he provided under oath, was false. Benjamin conveniently fails to provide any explanation for his changed position.

*__"#1 - The Home Equity Affidavit statement was proven to be false when the discovery process revealed the existence of the § 50(g) notice (see Dkt 143-3).__*

*__"#2 - That document was previously unknown to Plaintiff due to Defendant NOT delivering the document at closing, nor, delivering it to Plaintiff BEFORE Plaintiff's deposition.__*

>*__In fact, Defendant's refusal to deliver the document before Plaintiff's deposition was so egregious, it prompted Plaintiff to file a formal complaint against Defendant for maliciously violating several F.R.C.P. (see Dkts 125, 126,129, 130, 132)__*

*__"#3 – The existence of the § 50(g) notice only became known when Defendant submitted their "DEFENDANTS' MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW" (Dkt 141). That § 50(g) notice was identified in that motion as Dkt 143-3.__*

> ***"#4 - Plaintiff signed his WRITTEN application on November 24, 2004 as per the requirements of the Notice Concerning Extensions of Credit defined by Section 50(a)(6)(M), Article XVI of the Texas Constitution (see Dkt 143-3)***

The law is crystal clear: Benjamin cannot avoid summary judgment merely by contradicting the sworn statements he made in the Home Equity Affidavit. See Cleveland v. Pol'y Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999) ("[A] party cannot create a genuine issue of fact . . . simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn [testimony]) without explaining the contradiction or attempting to resolve the disparity.").

> ***"As stated in the previous statement by Plaintiff ...... the Home Equity Affidavit sworn statement made at closing was proven to be false because the discovery process had revealed that Plaintiff signed his WRITTEN application on November 24, 2004 as per the requirements of the Notice Concerning Extensions of Credit defined by Section 50(a)(6)(M), Article XVI of the Texas Constitution (see Dkt 143-3)"***

As a general rule, a borrower's sworn statements at closing "are conclusive on issues of compliance with the [Texas] Constitution's home equity provisions, regardless of later allegations that the statements were false." Inge v. Bank of America, N.A., No. 4:17-CV-705, 2018 WL 4224918, at *14 (E.D. Tex. July 19, 2018) (emphasis added). In recent years, court after court has reiterated this well-settled legal principle. See, e.g., Sivertson v. Citibank, N.A., 390 F. Supp. 3d 769, 778 (E.D. Tex. 2019) (dismissing a quiet-title claim on summary judgment because the "Plaintiff signed an affidavit attesting to the fair market value of the Property, and further swearing that such value and the amount of the Loan did not violate the Texas Constitution."); Sierra v. Ocwen Loan Servicing, LLC, No. CIV.A. H-10-4984, 2012 WL 527940, at *5 (S.D. Tex. Feb. 16, 2012) (granting summary judgment on alleged violation of the Texas Constitution's home equity loan requirements because plaintiffs' "self-serving and after-the-fact affidavits [were] contradicted by numerous documents that they signed contemporaneously indicating that they did in fact receive copies of relevant documents during the loan process.").

A number of courts have found that a genuine issue of material fact exists when a plaintiff submits a self-serving affidavit claiming noncompliance with the Texas

Constitution's home equity provisions and additional proof of noncompliance. For example, in Ford v. Bank of New York Mellon, the borrower signed a home equity affidavit as part of the loan transaction that indicated that the closing took place at the lender's office, an attorney's office, or the title company's office. No. 6-18-CV-00299, 2019 WL 7759097, at *3 (W.D. Tex. Nov. 15, 2019). In opposing summary judgment, the borrower presented her own affidavit claiming that the closing actually took place at her home. See id. The borrower also submitted "the affidavit of a separate individual who was present at the time and place the documents were closed specifically for the purpose of observing and notarizing the transaction." Id. These "sworn statements of two separate individuals present at the time of closing create[d] a fact issue that preclude[d] summary judgement." Id. In another case, Dill v. Federal Home Loan Mortgage Corp., the borrower "submitted not only her own affidavit [claiming that the closing took place at her home], but also a log from the notary who witnessed [her] sign the loan documents and an affidavit from the notary." No. CV H-19-4755, 2020 WL 7407135, at *5 (S.D. Tex. Dec. 17, 2020). The Dill court found a genuine issue of material fact as to where the closing documents were signed. See id.

This case is nothing like Ford or Dill.

Benjamin has not submitted any evidence indicating that his sworn statement should be disregarded.

***"#1 - The evidence indicating that Benjamin's sworn statement should be disregarded was submitted by the DEFENDANT as the § 50(g)  Notice (see Dkt 143-3).  Benjamin is using the DEFENDANT'S own verified document.***


***"#2 - Dkt 143-3 is titled "Notice Concerning Extensions Of Credit Defined By Section 50 (a)(6), Article XVI, Texas Constitution".   This is the (2004 version).***


***"#3 - § 50(a)(6)(M) of Dkt 143-3 states, in part …..***

> ***The loan may not close before 12 days after you submit a WRITTEN application to the lender or before 12 days after you receive this notice, which ever date is later;***

*"#4 - Benjamin submitted his WRITTEN  application on November 24, 2004. Therefore, § 50(a)(6)(M) of Dkt 143-3 proves the sworn statement in the Home Equity Affidavit is false.*


*"#5 – Additionally, as Chief District Judge Rosenthal stated[3] ….. "While a borrower's sworn, signed closing documents trump later conflicting allegations and affidavits, they do not necessarily trump other forms of evidence."*

*"It is Plaintiff's contention that the DEFENDANT'S document Dkt 143-3 is one of those other forms of evidence that trumps the sworn Home Equity Affidavit."*


In fact, the summary judgment record is devoid of any sworn statement made by Benjamin in which he contends that the loan closed less than 12 days after he submitted the loan application. Benjamin does assert in various pleadings that he did not receive timely notice, but it is well-established that unverified pleadings do not "constitute competent summary judgment evidence." King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994).

*"The competent summary judgement evidence that Benjamin is relying on -- Dkt 143-3 – has been verified by way of a declaration submitted under oath by a designated Bayview representative (see Dkt 143-1)."*


See also Powers v. Northside Indep. Sch. Dist., 951 F.3d 298, 307 (5th Cir. 2020) ("The party opposing summary judgment must go beyond the pleadings and identify specific evidence in the record showing that there is a genuine issue for trial.").


*"The specific evidence in the record showing there is a genuine issue for trial is the following ….*

---

[3] See "Hutton v. Federal National Mortgage Assoc." No. 4:21-cv-00556, Doc. No. 16, pgs. 7-8, (S.D. Tex., April. 23, 2021)

**(#1) - Plaintiff's legitimate loan application (Dkt 50) vs Defendant's fraudulent loan application (Dkt 42, Exhibit O).**

**(#2) - When the loan application was submitted.**

**(#3) - "Whether or not Plaintiff is estopped from asserting a breach of contract claim based on the Home Equity Note because of the Affidavit is an issue of fact that is not properly considered at the Rule 12(b)(6) stage of the proceedings". -- Magistrate Judge Edison, Dkt 80, pg 11, para 2.**

**(#4) - the § 50(g) notice of 2004 (Dkt 143-3) (§ 50(a)(6)(M) )  vs  the § 50(g) notice of  2007 (50(a)(6)(M)(i) )**

**(#5) - In view of the discredited declaration of Bayview's Ms. Snyder, the question of her competency, truthfulness, and accuracy  are raised regarding the statements in her sworn affidavit Dkt 141-1.**

In short, Benjamin has presented no competent summary judgment evidence that provides any basis for me to ignore the representations he made in the Home Equity Affidavit. Benjamin cannot now, 17 years after making sworn statements that the loan complied with certain provisions of the Texas Constitution, change his tune without any additional proof of noncompliance.

**"The proof of noncompliance with the provisions of the Texas Constitution (specifically, § 50(a)(6)(M) )   is found in the DEFENDANT'S submitted evidence document  #143-3.**

By way of a declaration submitted under oath by a designated representative, Bank of New York and Bayview allege that Benjamin applied for a loan on November 4, 2004, and that he received the § 50(g) notice the same day.

> *"#1 – That same designated representative, submitted under oath, that Benjamin's property was secured by the wrong address (Dkt 143-1, para 7).*
>
> *"(#2) - That fact cast doubt on All of the declarations made by the discredited designated representative.*

Interestingly enough, Benjamin readily admits that he applied, telephonically, for a loan on November 4, 2004. See Dkt. 146-1 at 8 (referring numerous times to a November 4, 2004 "TELEPHONE application"); Dkt. 152 at 13 ("[T]he November 4, 2004 application was a TELEPHONE application.").

However, Benjamin argues that telephonic application did not start the 12-day clock because "the lender converted the TELEPHONE application into [a] fraudulent paper application" (replete with errors) and forged Benjamin's signature. Dkt. 146-1 at 8.

> *"#1 - Benjamin argues that the telephone application did not start the 12-day clock because the Extension Of Credit specifically required Benjamin's WRITTEN application (see Dkt 143-3). Benjamin submitted his WRITTEN application on November 24, 2004.*
>
> *"#2 – The fraudulent TELEPHONE paper application was not replete with errors …... it was replete with lies.*
>
> *"#3 - Those lies were proven by the following submitted summary judgement evidence …..*
>
> - *Exhibit AA47 – 2003 tax returns – reported occupation was a "trader". Establishes the occupation listed on the fraudulent 2004 loan application as "market representative" was false.*

- ***Exhibit AA48 – 2004 tax returns – reported occupation was a "trader". Establishes the occupation listed on the fraudulent 2004 loan application as a "market representative" was false.***

- ***Exhibit AA52 -- Vehicle ID card expiration June 2000. Proves Plaintiff was living in Chicago since at least 1999.  Establishes Plaintiff was living in Chicago when the fraudulent November 4, 2004 loan application said Plaintiff was working in Houston.***

- ***Exhibit AA53 – Bank Statement - Establishes Plaintiff was living in Chicago when the fraudulent November 4, 2004 loan application said Plaintiff was working in Houston."***

- ***Exhibit AA57 – 2005 tax returns – Establishes Plaintiff's occupation as a Trader, as opposed to the fraudulent November 4, 2004 loan application stating Plaintiff is a "Marketing Representative"***

- ***Exhibit AA61 – Experian Credit Report - Establishes the lender fabricated the existence of the two (2) credit cards on the fraudulent November 4, 2004 loan application***

- ***Exhibit AA62 -- Illinois state ID -- Establishes Plaintiff was living in Chicago when the fraudulent November 4, 2004 loan application said Plaintiff was working in Houston."***

Benjamin maintains that the 12-day waiting period did not begin to run until November 24, 2004, the date he purportedly submitted a "legitimate" written loan application. See id.

Putting aside the fact there is no competent summary judgment evidence supporting this theory …..

> **_"#1 – It is not a theory ….. it's common sense.  ANY telephone conversation/application ABSOLUTELY MUST be transferred to a paper document before that conversation/application can get a signature on it._**

> **_"#2 - The competent summary judgement evidence supporting Benjamin's position is ….. the DEFENDANT'S own submitted document … the § 50(g) Notice  (see Dkt 143-3)._**

> **_#3 – Because the fraudulent November 4, 2004 loan application was taken via the  telephone --- where only the Plaintiff and the Lender were speaking --- who is the likely source of all the lies contained in that fraudulent loan application?_**

Benjamin's claim fails even if everything he says is true ....

The Fifth Circuit has expressly held that "the broad term 'application' . . . in § 50(a)(6)(M)(i) . . . encompass[es] oral applications, including telephonic applications." Cerda v. 2004-EQR1 L.L.C., 612 F.3d 781, 788 (5th Cir. 2010).

> **_"#1- The 5th Circuit made that statement in 2010 (see the reference above)._**

> **_"#2 – Benjamin contends that  § 50(a)(6)(M)(i) is not the correct Texas Constitutional article to be referenced.  The correct Texas Constitutional article to be referenced  is § 50(a)(6)(M) because that was the one in force in 2004 when Benjamin signed his loan documents (see Dkt 143-3).  There is a significant difference between § 50(a)(6)(M)(i) and § 50(a)(6)(M)_**

> **_"#3 – In that same Cerda v. 2004-EQR1 case, para 789, the 5th Circuit stated ..._**

"Our interpretation is consistent with the version of § 50(a)(6)(M)(i) **currently in force, which was amended in 2007** to refer generally to a "loan application." TEX. CONST. art. XVI, § 50(a)( 6) (M)(i); see also 7 TEX. ADMIN. CODE § 153.12(2) ("A loan application may be given orally or electronically."). The legislative history behind that amendment reveals the broad reach of that term:"

*#4 – In that same case, para 787, the 5th Circuit also stated …...*

However, **the home equity loan amendments DO NOT apply retroactively,** see Fix v. Flagstar Bank, FSB, 242 S.W.3d 147, 155-57 (Tex.App. — Fort Worth 2007, pet. denied), and a rule promulgated under authority of those constitutional provisions provides safe harbor to lenders only if the rule is in effect when the loan is made, see TEX. CONST. art. XVI, § 50(u)( 1). **Thus, we apply the version of the Texas Constitution that was in effect in 2002 — when the Cerdas entered into the loan with New Century Mortgage.**

Thus, the date upon which Benjamin claims he submitted a written loan application is immaterial; …....

*"#1 - How can the date Plaintiff submitted his WRITTEN loan application be immaterial when The Notice Concerning The Extension Of Credit EXPLICITLY requires Plaintiff to submit a WRITTEN application (Dkt 143-3) ?!!??!!*

*"#2 – See Benjamin comments #1, #2, #3 & #4 above for the 5th Circuit's definitive answer as to which Extension of Credit Section Plaintiff is to be judged by:*

*§ 50(a)(6)(M)   or   § 50(a)(6)(M)(i)*

….. the 12-day waiting period began to run on November 4, 2004, when Benjamin submitted a telephonic application and was provided the § 50(g) notice.

-

*"(#1) - It is proven that the fraudulent telephonic application has Benjamin's forged signature on it dated November 4, 2004.*

*"(#2) - the § 50(g) notice also has Benjamin's forged signature on it dated November 4, 2004.  Plaintiff contends that neither the fraudulent telephonic application nor the § 50(g) notice were given to Plaintiff on November 4, 2004.*

*"(#3) - The November 4, 2004, telephonic application is a complete fraud containing false information and my forged signature.   This is all detailed in "Plaintiff's Reply To Defendants' Reply Brief In Support Of Their Motion For Summary Judgement And Motion To Strike (Dkt 152)"*

All sides agree that the loan closed on November 30, 2004—which is obviously more than 12 days after Benjamin made the oral loan application. There is simply no violation of the Texas Constitution's 12-day waiting period.

Because Benjamin's quiet-title claim is based entirely on his contention that the loan violated § 50(a)(6)(M)(i) .......

*"The above statement is not correct ...........*

*"(#1) - Plaintiff's contends that the loan violated § 50(a)(6)(M) (see Dkt 143-3).*

*"(#2) - In  2004,   § 50(a)(6)(M)(i) did NOT exist.*

....... my determination that there is no violation of § 50(a)(6)(M)(i) is fatal.

*Plaintiff respectfully request that the Magistrate do a determination to see if there was a violation of the article in force at the time  ..... § 50(a)(6)(M) (see Dkt 143-3).*

His requests for declaratory and injunctive relief likewise fail in the absence of a viable underlying cause of action. See Lucky Tunes #3, L.L.C. v. Smith, 812 F. App'x 176, 184

19

(5th Cir. 2020). Accordingly, Bank of New York and Bayview are entitled to judgment as a matter of law.

CONCLUSION

For the reasons set forth above, I recommend that Defendants' Motion for Summary Judgment (Dkt. 143) be GRANTED.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

***"End Of Response"***

Respectfully submitted,

*/s/Kenneth  W.  Benjamin*

Kenneth W. Benjamin, pro se

15823 Kueben Lane

Missouri City, Texas, 77489

k2ben2@swbell.net

281-835-0092

December 17, 2021

CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served upon Matt Manning, mmanning@mcglinchey.com, and Kasey Davis, kdavis@mcglinchey.com, on December 17, 2021.

*/s/ Kenneth W. Benjamin*

Kenneth W. Benjamin,